OPINION
 

 GARRARD, Judge
 

 Case Summary
 

 Indianapolis Athletic Club (“IAC”) filed a claim against Aleo Standard Corporation and the Delfield Division of Aleo Standard Corporation (“Delfield”) after IAC sustained property damage following a fire. IAC alleged that the fire had been caused by a defect in the electric cord of a refrigerator manufactured by Delfield. After a seventeen-day trial, the jury found in favor of Delfield. IAC appeals and we affirm.
 

 
 *1172
 
 Issues
 

 I. Whether there was sufficient evidence to support the trial court’s jury instruction regarding misuse, modification, and alteration.
 

 II. Whether the trial court properly instructed the jury regarding the “state of the art” defense where the plaintiffs complaint alleged a manufacturing defect.
 

 III. Whether the trial court properly instructed the jury regarding “accident-proof’ products and manufacturer duty.
 

 IV. Whether the trial court properly instructed the jury regarding mitigation of damages.
 

 Facts and Procedural History
 

 On February 5,1992, a fire occurred at the IAC causing significant property damage. The fire was investigated by officials from several governmental agencies, who were unable to conclusively identify the cause of the fire. The investigators did determine, however, that the origin of the fire was an area behind a refrigerator. The refrigerator was manufactured by the Delfield division of Aleo Standard Corporation. IAC filed a claim against Delfield sounding in strict liability and breach of warranty specifically alleging that a defect in the refrigerator’s electrical cord caused the fire. Delfield pled the affirmative defenses of misuse of the product, modification or alteration of the product, and state of the art. At trial, Delfield presented a theory that it was not the refrigerator’s electrical cord, but a defect in the electrical outlet, that caused the fire. Following a seventeen-day jury trial, the jury entered judgment in favor of Delfield. Other facts will be discussed as necessary.
 

 Discussion and Decision
 

 I. Misuse, Modification, and Alteration Jury Instruction
 

 IAC first contends that the trial court erred in instructing the jury as follows:
 

 At the time of the occurrence being considered, there was in full force and effect in the State of Indiana, a statute which provided in part as follows:
 

 (b) With respect to any product liability action based on strict liability in tort:
 

 (1) It is a defense that a cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to the party.
 

 (2) It is a defense that a cause of the physical harm is a modification or alteration of the product made by any person after delivery to the initial user or consumer if such modification or alteration is the proximate cause of physical harm where such modification or alteration is not reasonably expectable to the seller.
 

 Record at 119-20.
 

 IAC does not contend that this instruction misstates the law; rather, it argues that there was no evidence introduced at trial to support giving the instruction. We review the trial court’s decision to give a jury instruction under an abuse of discretion standard.
 
 Underly v. Advance Mach. Co.,
 
 605 N.E.2d 1186, 1190 (Ind.Ct.App.1993),
 
 trans. denied.
 
 In reviewing a claim that evidence was insufficient to support the giving of an instruction, we will look only to the evidence most favorable to the appellee and any reasonable inferences to be drawn therefrom. If there is any evidence to support the instruction, it was properly given.
 
 Id.
 
 at 1191.
 

 Under Indiana Code Section 33-1-1.5-4(b)(2), “[i]t is a defense [to a strict liability action] that a cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party.” Misuse of a product is a defense that completely bars a product liability claim as it is considered an intervening cause that relieves the manufacturer of liability where the intervening act could not have been reasonably foreseen by the manufacturer.
 
 Marshall v. Clark Equipment Co.,
 
 680 N.E.2d 1102, 1108 (Ind.Ct.App.1997),
 
 trans. denied.
 

 Indiana Code Section 33-l-1.5-4(b)(3) also provides that, “[i]t is a defense that a cause of the physical harm is a modification or alteration of the product made by any person after its delivery to the initial user or consumer if such modification or alteration is the proximate cause of physical harm where such
 
 *1173
 
 modification or alteration is not reasonably expectable to the seller.” Substantial change or alteration is defined as “any change which increases the likelihood of a malfunction, which is the proximate cause of the harm complained of, and which is independent of the expected and intended use to which the product is put.”
 
 Schooley v. Ingersoll Rand, Inc.,
 
 631 N.E.2d 932, 938 (Ind.Ct.App.1994).
 

 Turning to the present case, Delfield contends that it was entitled to raise these defenses and have the jury instructed regarding them since there was evidence that the electrical cord on the refrigerator was misused, modified, or altered after its delivery to IAC. Delfield’s expert witness, Steven Hoyle, testified that misuse of the electrical cord by the user is a common cause of fires. There was also evidence that the refrigerator could have been moved, which Delfield asserted might have caused “crimping” in the cord. An IAC bartender, Robert Stewart, testified that there was evidence of rodents in the bar area and Howard Prosser, another IAC expert, testified that mice chewing on the cord could have caused the fire.
 

 Viewing the evidence in the light most favorable to Delfield, we nonetheless conclude that there was insufficient evidence to support this instruction. First, the evidence of “crimping” fails to support the instruction. Delfield contends that cord crimping could have been caused by an IAC employee moving the refrigerator. There is no direct evidence that such crimping occurred; however, even assuming this as true, moving the refrigerator cannot be considered a misuse or a modification or alteration of the product. Moving the refrigerator did not modify or alter it from its original state, nor can moving it be considered a misuse. Moreover, misuse is use for a purpose or in a manner not reasonably foreseeable.
 
 Jarrell v. Monsanto Co.,
 
 528 N.E.2d 1158, 1168 (Ind. Ct.App.1988),
 
 trans. denied.
 
 Delfield could have reasonably foreseen that an IAC employee would move the refrigerator.
 

 Second, the evidence of rodents chewing on the cord also fails to support the instruction. Again, there is no direct evidence that rodents chewed on the cord, only evidence that rodents were in the general vicinity of the refrigerator. Even assuming that rodents did chew on the cord, this still fails to support the misuse, modification, and alteration instruction. The statutory misuse defense provides that “[i]t is a defense that a cause of the physical harm is a misuse of the product
 
 by the claimant or any other person ....”
 
 while the modification or alteration defense provides that “[i]t is a defense that a cause of the physical harm is a modification or alteration of the product
 
 made by any other
 
 person_” Ind.Code § 33—1—1.5— 4(b)(2), (3) (emphasis added). If rodents chewed on the cord, then this was not an action by any person, as required by the plain language of the statute. Therefore, the evidence is insufficient to support the jury instruction.
 

 Having determined that there was insufficient evidence to support the instruction, we must yet decide whether the instruction was prejudicial to IAC. Although a jury instruction may have been given in error, the error is not reversible unless the complaining party was prejudiced thereby.
 
 Spirito v. Temple Corp.,
 
 466 N.E.2d 491, 493 (Ind.Ct. App.1984),
 
 trans. denied.
 
 Moreover, where an instruction presents a correct statement of law, but no evidence supports it, the objecting party is generally unharmed by the instruction.
 
 Id.
 
 For example, in
 
 Spirito,
 
 the court gave an instruction on contributory negligence in a tort case where the statement of law in the instruction was correct, but there was no evidence to support the instruction. This court concluded that there was no prejudice stating: “[wjhere the instruction presents a correct statement of the law, no prejudice will result from the jury obeying the instruction, e.g., they will find no contributory negligence where the instruction properly defines the applicable law and there is, in fact, no evidence of contributory negligence in the record.”
 
 Id.
 
 As in
 
 Spirito,
 
 the appellant here was unharmed by the court’s instruction on misuse, modification, and alteration which correctly stated the law on that subject.
 

 II. “State of the Art” Jury Instruction
 

 IAC next contends that the trial court erred in instructing the jury as follows:
 

 
 *1174
 
 With respect to any product liability action based on strict liability in tort:
 

 (3) When physical harm is caused by a defective product, it is a defense that the design, manufacture, inspection, packaging, warning, or labeling of the product was in conformity with the generally recognized state of the art at the time the product was designed, manufactured, packaged and labeled.
 

 Record at 120.
 

 “State of the art” is a defense in this case. Product sellers such as Delfield are not liable if their product was manufactured in conformity with the generally recognized “state of the art.” The term “state of the art” is defined as the best technology reasonably feasible at the time the product was manufactured.
 

 Whether a product’s manufacture was in conformity with the generally recognized state of the art you may consider [sic]: evidence of the existing level of technology, industry standards, the lack of other advanced technology and the product’s safety record at the time the product was manufactured.
 

 You are instructed that if you find from a preponderance of the evidence that the refrigerator in question was manufactured in conformity with the generally recognized state of the art, then your verdict may be for the Defendant.
 

 Record at 122. IAC contends that giving a state of the art instruction is in error since the state of the art defense is inconsistent with a claim that physical harm was caused by a manufacturing defect. Specifically, IAC maintains that Indiana Code Section 33-1-1.5-4, which provided for the state of the art defense, is erroneous and is inconsistent with the strict liability concept. Appellant’s Br. at 17.
 

 Indiana Code Sections 31-l-1.5-4(a) and (b)(4), which were applicable to this case, read as follows:
 

 The defenses brought under this section are defenses to actions in strict liability for tort.
 

 (b) With respect to any product liability action based on strict liability in tort:
 

 (4) When physical harm is caused by a defective product, it is a defense that the design, manufacture, inspection, packaging, warning, or labeling of the product was in conformity with the generally recognized state of the art at the time the product was designed, manufactured, packaged, and labeled.
 
 [1]
 

 To support its argument, IAC relies on
 
 Weller v. Mack Trucks, Inc.,
 
 570 N.E.2d 1341 (Ind.Ct.App.1991).
 
 Weller
 
 addressed the issue of whether there was sufficient evidence to support a state of the art jury instruction in a manufacturing defect case. Although the court decided that there was sufficient evidence, in so deciding, the court stated:
 

 Weller’s argument on appeal focuses upon an alleged manufacturing defect of the particular castle nut in Weller’s truck. Weller’s trial objection did not encompass an argument that the “state of the art” defense does not apply because this particular castle nut was defectively manufactured. Thus, we consider only the grounds of the objection made at trial: whether the evidence sufficiently supported that the use of castle nuts and their manufacturing process were “state of the art” in order to instruct the jury on the affirmative defense.
 

 Id.
 
 at 1343. IAC contends that, through this language, the
 
 Weller
 
 court is suggesting that the state of the art defense should not apply to manufacturing defect cases. In contrast, Delfield argues that, in affirming the trial court’s use of the state of the art defense, the court implicitly approved the use of the state of the art defense in manufacturing defect cases. We decline to read so much into the court’s opinion and instead simply note that, as yet, there are no reported cases in Indiana addressing the issue of whether the state of
 
 *1175
 
 the art defense is appropriate in manufacturing defect cases.
 

 We conclude that the trial court properly instructed the jury regarding the state of the art defense. Indiana Code Section 33-1-1.5-4(b) stated that the defenses included in the statute were applicable “with respect to
 
 any
 
 product liability action based on strict liability in tort.” Ind.Code § 33—1—1.5—4(b) (emphasis added). Moreover, the section establishing the state of the art defense stated that “[w]hen physical harm is caused by a defective product, it is a defense that the design,
 
 manufacture,
 
 inspection, packaging, warning, or labeling of the product was in conformity with the generally recognized state of the art at the time the product was designed,
 
 manufactured,
 
 packaged, and labeled.” Ind.Code § 33-l-1.5-4(b)(4) (emphasis added). Based on the plain language of the statute, the state of the art defense was applicable to IAC’s manufacturing defect claim, and was not restricted to design defect matters, as IAC argues.
 

 The court’s instruction also correctly stated the law regarding the state of the art defense. This court had previously determined that “state of the art” is not a legal term of art meaning industry custom and practice.
 
 Montgomery Ward & Co. v. Gregg,
 
 554 N.E.2d 1145, 1155 (Ind.Ct.App.1990),
 
 trans. denied.
 
 Rather, the courts have “embraced the concept of technological advancement” in defining state of the art.
 
 Phillips v. Cameron Tool Corp.,
 
 950 F.2d 488, 490 (7th Cir.1991). Instruction number 7.05(A) of the Indiana Pattern Jury Instructions (Civil) states that the term “state of the art” means “the best technology reasonably feasible at the time the Defendant [designed] [manufactured] [packaged] and/or [labeled] the product.”
 
 [2]
 

 Here, the court instructed the jury that state of the art was the “best technology reasonably feasible at the time of trial.” Record at 122. Although the court also stated that the jury could consider industry standards in making this determination, this is not inconsistent with the
 
 Montgomery Ward
 
 decision. Industry standards were mentioned as one of four factors that the jury could consider in deciding whether Delfield used the best technology reasonably feasible, but were not presented as the definition of state of the art. Based on the foregoing, we conclude that the trial court did not err in giving the jury an instruction on the state of the art defense.
 

 III. “Accidentr-Proof’ Instruction
 

 IAC asserts that the trial court erred in instructing the jury as follows:
 

 While a manufacturer is under no duty to produce accident-proof products, it is legally under a duty to design and build products that are reasonably fit and safe for the purpose for which they are intended.
 

 Record at 121. IAC argues that this instruction is tantamount to a “mere accident” instruction and is, therefore, improper. Under Indiana law, it is reversible error to instruct the jury that a plaintiff may not recover if his damages are the result of a “mere” or “pure” accident.
 
 Weinand v. Johnson,
 
 622 N.E.2d 1321, 1324 (Ind.Ct.App.1993). This is true because of the danger of varying and ambiguous definitions and interpretations of the word “accident.”
 
 Id.
 
 The instruction is misleading because it suggests that the defendant is not liable for causing a “mere accident” even though the 'defendant may have been negligent in causing the accident.
 
 Id.
 
 at 1324-25. Our supreme court has stated:
 

 It is thus readily apparent that the word “accident” does not necessarily preclude fault or negligence. The term is susceptible of different meanings and constructions and to tell a jury there is no liability in case of “unavoidable accident” or “pure accident” i.e., an unintentional, careless, or unknown occurrence, is misleading and confusing to say the least, and is not compatible with the principles of tort law imposing liability on persons who fail to exercise ordinary or reasonable care.
 

 Miller v. Alvey,
 
 (1965) 246 Ind. 560, 207 N.E.2d 633, 636.
 

 This general rule against “mere accident” instructions applies even if the in
 
 *1176
 
 struction does not employ the word “accident.” Instructions that impliedly convey to a jury that a mere accident occurred are also impermissible.
 
 Chaffee v. Clark Equipment Co.,
 
 496 N.E.2d 84, 86-87 (Ind.1986). However, the mere use of the word “accident” in an instruction will not automatically render the instruction impermissible. For example, reversible error has not been found if an instruction contains the word “accident” but essentially deals with burden of proof or proximate cause.
 
 Dunlap v. Goldwin,
 
 425 N.E.2d 724, 726 (Ind.Ct.App.1981). In determining whether a particular instruction was an improper mere accident instruction, we must examine whether the jury is likely to be misled by the use of the word “accident” or by similar language.
 
 Weinand,
 
 622 N.E.2d at 1325. Reversible error should be found where the instruction speaks to the issue of liability and, in substance, describes liability in terms of a mere accident.
 
 Dunlap,
 
 425 N.E.2d at 726.
 

 Weinand
 
 provides a clear example of an improper “mere accident” instruction. In
 
 Weinand,
 
 the plaintiff Weinand was involved in an auto accident with Johnson and filed a complaint for damages based on a negligence theory.
 
 Weinand,
 
 622 N.E.2d at 1323. At trial, the court instructed the jury as follows:
 

 The occurrence of the automobile accident alone, involving vehicles being driven by Darlene Weinand and Don Johnson is not enough to sustain [Weinand’s burden of proof]. Rather, when an event takes place, such as the accident of June 22, 1990, the real cause of which cannot be traced or which is not apparent, that accident ordinarily belongs to the class of occurrences designated as purely accidental and, there being no presumption of negligence in such cases, the party asserting negligence must show enough to establish that the cause was the Defendant’s negligence.
 

 Id.
 
 The language used in this instruction is exactly the language warned against in early “mere accident” instruction cases and, accordingly, led the
 
 Weinand
 
 court to find that the trial court committed reversible error in giving it.
 
 Id.
 
 at 1326.
 

 However, in the instant case, the instruction in question is more properly classified as an “accident-proof’ instruction than a “mere” or “pure” accident instruction. While our courts have consistently held that “mere accident” instructions are impermissible, the line is not so clear regarding “accident-proof’ instructions in products liability cases. For example, an “accident-proof’ instruction, such as the one given in the instant case, does not misstate Indiana law. In
 
 Liberty Mut. Ins. Co. v. Rich Ladder Co.,
 
 441 N.E.2d 996, 999 (Ind.Ct.App.1982), this court stated: “While a manufacturer is under no duty to produce accident-proof products, it is legally bound to design and build products which are reasonably fit and safe for the purpose for which they are intended.” Likewise, in
 
 Chase v. Settles,
 
 (1970) 148 Ind.App. 259, 265 N.E.2d 57, this court approved an accident-proof instruction stating, “the defendant was not an insurer or guarantor that accidents would not happen and he was not required to make accidents impossible. The matter of whether the defendants were negligent in failing to anticipate and guard against the accident was fairly presented to the jury by this instruction.”
 
 Chase,
 
 265 N.E.2d at 60-61. Despite this, courts have disapproved of the “accident-proof’ instruction.
 

 In asserting that the accident-proof instruction here was improper, IAC relies on
 
 Dunlap v. Goldwin,
 
 425 N.E.2d 724. In
 
 Dunlap,
 
 the plaintiff, Dunlap, dove from a twenty-foot platform into a pool owned by the defendant, Goldwin, sustaining injury. Dunlap filed a complaint against Goldwin alleging that the pool’s depth marks were inaccurate and that the pool was unsafe.
 
 Dunlap,
 
 425 N.E.2d at 725. At trial, the court gave the jury the following instruction:
 

 An owner of a swimming pool is not an insurer of the safety of the users thereof, nor is he required to maintain a pool which is accident-proof or to use every possible precaution to avoid the occurrence of injury. Rather, the defendant’s duty under the circumstances was to use reasonable care in maintaining the pool so that it would be reasonably safe for its intended purpose.
 

 Id.
 
 The court held that this instruction was erroneous since it spoke to the issue of liability. Specifically, the court stated that “[t]he use of non-liability verbiage in the first sen
 
 *1177
 
 tence of the instruction before us, ‘not an insurer’ and ‘accident proof,’ so taint the instruction as to make it fatally defective as the instruction in
 
 Miller v. Alvey.” Id.
 

 Other courts, however, have allowed accident-proof instructions. In
 
 Pilkington v. Hendricks County Rural Elec.,
 
 460 N.E.2d 1000 (Ind.Ct.App.1984), the plaintiff, Pilking-ton, was electrocuted while sitting on metal bleachers when another person sitting in the bleachers came into contact with the defendant’s 7,200-volt power line. Pilkington sued the defendant for damages asserting that the defendant had failed to properly inspect the power line.
 
 Pilkington,
 
 460 N.E.2d at 1008. At trial, the judge instructed the jury:
 

 [T]he duty imposed upon the defendant, ... does not require it to use every possible precaution to avoid damage to the plaintiff; nor does the duty imposed by law require that the defendant, ... should have employed any particular means, which it may appear after the accident would have avoided; nor was the defendant required to make accidents impossible. The question for you to determine from the evidence is not whether the accident to the plaintiffs might have been avoided if the defendant, ... had anticipated its occurrence, but whether, taking all of the circumstances as they existed just before or at the time of the accident, the defendant was guilty of negligence in the operations of its business as an electric distribution utility to anticipate and guard against the accident involving the plaintiffs.
 

 Id.
 
 at 1006. On appeal, Pilkington argued that this instruction was a “pure accident” instruction of the type disapproved by
 
 Dunlap
 
 and
 
 Miller.
 
 The court disagreed and held that the use
 
 of
 
 this instruction did not constitute reversible error.
 
 Id.
 
 In so holding, the court distinguished the
 
 Miller
 
 and
 
 Dunlap
 
 decisions by the phrases and words used in the instruction.
 
 Id.
 
 at 1007.
 

 In
 
 Conder v. Hull Lift Truck, Inc.,
 
 435 N.E.2d 10 (Ind.1982), the plaintiff, Conder, was injured while operating a forklift truck manufactured by the defendant, Allis-Chalmers Corp. (Allis-Chalmers). Conder filed a claim against Allis-Chalmers alleging that the forklift’s design was defective.
 
 Conder,
 
 435 N.E.2d at 13. At trial, the trial judge read the following instruction to the jury:
 

 [T]he Defendant, Allis-Chalmers Corp., was not and is not an insurer or guarantor in regard to the quality of its product and is not required to manufacture or produce a product which is perfect or accident proof. Neither is the defendant, ... liable for any and all accidents or damage which arise out of or which may occur by reason of the use of its products. The law only requires that the defendant, ... produce a product which at the time of its manufacture and sale to a third person be reasonably safe for the use for which it was intended.
 

 Id.
 
 at 16. On appeal, Conder objected to the jury instruction. Our supreme court held, however, that the instruction “properly instructed the jury on this subject.”
 
 Id.
 
 at 17. In so holding, the court stated that “[i]t is true, .., that a manufacturer or seller is not liable for every failure of its product which results in injury and is liable only if the product contains a defective condition rendering it unreasonably dangerous.”
 
 Id.
 

 Based on the foregoing, we conclude that the trial court’s decision to give the “accident-proof’ instruction in the instant case does not constitute reversible error. We caution trial courts, however, that giving such an instruction tends to raise the problems and issues previously discussed. Even in affirming the trial court’s decision to give the accident-proof instruction in
 
 Conder
 
 our supreme court conceded that “it was a poor choice of words.”
 
 Id.
 
 Thus, we recommend that it not be used in future cases.
 

 IV. Mitigation of Damages Instruction
 

 Lastly, IAC contends that the trial court erred in instructing the jury as follows:
 

 Defendants may show in mitigation of damages, any facts surrounding the damage complained of to reduce the amount required for just compensation to plaintiffs. Plaintiffs must use all reasonable diligence to make the damage as light as possible.
 

 Record at 123.
 

 We need not address this argument because the jury found for the defendant on the
 
 *1178
 
 issue of liability. Thus, any error in the instructions on damages is necessarily harmless.
 
 Adkins v. Poparad
 
 (1943), 222 Ind. 16, 51 N.E.2d 476.
 

 Affirmed.
 

 KIRSCH, J. and RILEY, J., concur.
 

 [1]
 

 . The state of the art defense has been abolished by Public Law 278-1995 and replaced by a re-buttable presumption on state of the art. Ind. Code § 34-20-5-1. However, the amendment abolishing the state of the art defense is not applied retroactively as it affects the defendant's substantive rights.
 
 Chesnut v. Roof,
 
 665 N.E.2d 7, 9 (Ind.Ct.App.1996).
 

 [2]
 

 . This instruction applies only to actions arising prior to July 1, 1995, the effective date of the 1995 Tort Reform Act, Public Law 278-1995, which eliminated “state of the art” as a defense in strict liability actions.