Monterey P. MORGEN, Appellant–
Plaintiff,

v.

**FORD MOTOR COMPANY,**
Appellee–Defendant.

No. 71A03–0003–CV–108.

Court of Appeals of Indiana.

Jan. 28, 2002.

David M. Hamacher, Thomas A. Clements, Ruman, Clements & Holub, P.C., Hammond, Indiana, James L. Gilbert, Paul J. Komyatte, Gilbert, Frank, Ollanik & Komyatte, P.C., Arvada, Colorado, Attorneys for Appellant.

Julia Blackwell Gelinas, Nelson D. Alexander, Allison S. Avery, Locke Reynolds LLP, Indianapolis, Indiana, John A. Krivicich, Donahue, Brown, Mathewson & Smyth, Chicago, Illinois, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Appellant, Monterey P. Morgen, appeals four issues arising out of a verdict against him in a products liability suit he filed against Ford Motor Company. First, he contends that the trial court erred by giving a jury instruction on the defense of product misuse solely because he did not wear his seat belt at the time of his injuries. He also argues that the trial court erroneously refused to give the jury instructions regarding Ford's duty to warn and an instruction stating that there could be more than one proximate cause of his injury. Finally, Morgen asserts that the trial court erred by refusing to allow him to rebut testimony from Ford's expert regarding injury causation. Because we find that the trial court erroneously instructed the jury on the misuse defense, we reverse and remand.

### Facts and Procedural History

On November 14, 1993, Morgen, who is six feet tall, sat in the rear seat passenger side of a 1984 Ford Escort L 4–door Wagon. Morgen did not wear the lap belt provided in the backseat. Kristy Snyder, his girlfriend, was the front seat passenger. Janet Snyder, his girlfriend's mother, drove the Escort. While the Escort was stopped at an intersection, a Honda Accord driven by Kim Possinger struck the Escort from behind. Morgen's expert estimated that the Honda Accord was traveling at 24 to 28 miles per hour at the time of impact while Ford's expert estimated that the Honda was traveling at 33 to 35 miles per hour. Due to the impact of Possinger's Accord from behind, the Escort hit an Oldsmobile Cierra in front of it. The back of the Escort was damaged. As a result of a spinal cord injury sustained in the accident, Morgen is a quadriplegic. Morgen filed a products liability suit against Ford claiming that the Escort was defective and that Ford failed to provide reasonable warnings.

Each side offered expert testimony to explain how Morgen was injured. Morgen's experts testified that he was injured when the rear seat deformed upward during the crash making his head strike the roof of the car, thereby causing his spinal cord injury. Morgen's experts testified that he hit the roof because of vertical seat movement. A dent in the roof above the backseat was created when Morgen's head struck the roof. Essentially, Morgen's experts claimed that the structural design of

the car reduced the occupant survival space or headroom in the Escort.

Ford denied that any rear seat deformity causing the seat to move upward during the crash was responsible for Morgen's injuries. Instead, Ford asserted that Morgen ramped up the seat and struck his head on the roof before or after, but not during the buckling of the floor pan. Ford's experts testified that when the Escort was rear-ended, initially the car moved forward, but Morgen did not move with the car. Instead, Morgen's torso remained in place as the seatback compressed and moved to a reclined position. The seatback then pushed Morgen forward. As his torso was driven forward, Morgen's head and neck, which were above the seat, flexed backward. Thus, Ford claims that Morgen's spinal injury occurred when he ramped up and over the seatback as the Escort moved forward. In addition, Ford relied on the defense of misuse of the product. Specifically, Ford maintained that it is not liable because Morgen misused the Escort by failing to wear the safety belt provided in the automobile.

At trial, Janet Snyder and Morgen testified that if they had known that the backseat would buckle upward in rear impact collisions, Morgen would not have ridden in the rear seat. Nonetheless, the trial court rejected jury instructions tendered by Morgen regarding the duty to warn of latent defects. The court also refused an instruction informing the jury that there can be more than one proximate cause of Morgen's injury. However, the trial court instructed the jury on Ford's misuse defense.

The jury returned a general verdict for Ford. The trial court entered judgment in favor of Ford and against Morgen upon the verdict. This appeal followed.

## Discussion and Decision

### *Standard of Review*

The decision to give or deny a tendered jury instruction is largely left to the sound discretion of the trial court. *Hagerman Constr., Inc. v. Copeland,* 697 N.E.2d 948, 959 (Ind.Ct.App.1998), *trans. denied.* We review the trial court's decision only for abuse of that discretion. *Id.* An instruction given to the jury must be a correct statement of the law, be applicable to the evidence adduced at trial, and be relevant to the issues the jury must decide in reaching its verdict. *Kelley v. Watson,* 677 N.E.2d 1053, 1056 (Ind.Ct.App.1997).

On review, we will reverse the trial court's refusal to give a tendered instruction when (1) the instruction is a correct statement of law, (2) it is supported by the evidence, (3) it does not repeat material adequately covered by other instructions, and (4) the substantial rights of the tendering party would be prejudiced by the failure to give the instruction. *Marshall v. Clark Equip. Co.,* 680 N.E.2d 1102, 1104 (Ind.Ct.App.1997), *trans. denied.* A party is entitled to have his theory of the case and the applicable law properly presented to the jury in the instructions. *City of Indianapolis Hous. Auth. v. Pippin,* 726 N.E.2d 341, 349 (Ind. Ct.App.2000). The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Centennial Mortgage, Inc. v. Blumenfeld,* 745 N.E.2d 268, 278 (Ind.Ct.App.2001). Where the verdict would not have differed had the jury been properly instructed, any error in the giving of the instruction is harmless. *Id.*

### *I. The Misuse Instruction*

At trial, the court instructed the jury that:

The Defendant, Ford Motor Company, contends that the plaintiff misused the product by not using the seat belt. . . . With respect to any product liability action based on strict liability and tort it is a defense [that] the cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party.

Record at 4625, 4629.[1]

Morgen contends that the trial court erred in giving this instruction because neither Indiana common law nor statutory law requires a backseat passenger to wear a safety belt. He points to the fact that although Indiana has adopted a safety belt statute that requires occupants in the front seat of a vehicle to wear a safety belt, Indiana does not have a statute requiring occupants in the rear seat of a vehicle to wear a safety belt. Morgen argues further that the failure to wear a safety belt in the backseat of a car is foreseeable as a matter of law based on prior Indiana cases and, therefore, failure to wear a safety belt is not a misuse. Furthermore, Morgen asserts that since the verdict was general in nature, the jury's verdict must be reversed because it could have been based on the misuse defense.

On the other hand, Ford contends that the question of whether it is foreseeable a passenger might not wear a safety belt is a question for the jury to decide. Ford argues that there is a continuum between consumer conduct that is "not reasonably expected" and consumer conduct that is "reasonably expected" and it is for a jury to determine when behavior passes from "reasonably expected" to "not reasonably expected." Appellee's Br. at 18. Ford also contends that Morgen waived the argument that he had no duty to wear a seat belt because he did not raise this argument at trial.

■ We initially address Ford's waiver argument. Our review of the record shows that Morgen objected to the instruction at trial on the grounds that failure to wear a safety belt is foreseeable and that Ford failed to prove that the failure to wear a safety belt caused Morgen's injury. The issue of duty is included in the issue of foreseeability because without a duty to wear a safety belt in the backseat, it is foreseeable that passengers in the rear seat will not engage their safety belts. This objection was preserved for appeal. Accordingly, we address the merits.

■ As Morgen indicates, in Indiana there is no common law duty for an occupant of a vehicle to wear a safety belt. *Hopper v. Carey*, 716 N.E.2d 566, 575 (Ind. Ct.App.1999), *trans. denied.* There is also no statutory duty for a backseat passenger to wear a safety belt. Indiana Code § 9–19–10–2 provides that:

> Each front seat occupant of a passenger motor vehicle that is equipped with a safety belt meeting the standards . . . shall have a safety belt properly fastened about the occupant's body at all times when the vehicle is in forward motion.

However, there is no statute mandating that a backseat passenger wear a safety

1. We note that the instruction was worded differently when it was given by the court as a preliminary instruction. As a preliminary instruction, it read:

> With respect to any product liability action based on strict liability in tort:

> It is a defense that *a* cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party.
> Record at 1101 (emphasis added).

belt. The Indiana Legislature could have established a duty that passengers sitting in the rear seat of a vehicle also wear safety belts. Nevertheless, they have not done so. Thus, passengers in the backseat do not have a statutory duty to wear a safety belt and we are unwilling to institute such a requirement in the common law. *See State v. Ingram*, 427 N.E.2d 444, 448 (Ind.1981) (examining the law before the current provision created a duty that front seat occupants wear safety belts and stating that, "[a]bsent a clear mandate from the legislature to require Indiana automobile riders to wear seat belts, we are not prepared to step into the breach and judicially mandate such conduct").

Furthermore, it is foreseeable that automobile passengers may not wear safety belts. We have repeatedly held that it is "clearly foreseeable" that a passenger might fail to wear a safety belt. *See Green v. State*, 650 N.E.2d 307, 310 (Ind. Ct.App.1995); *Warner v. State*, 577 N.E.2d 267, 270 (Ind.Ct.App.1991); *Bowman v. State*, 564 N.E.2d 309, 310 (Ind.Ct.App. 1990), *rev'd on other grounds*, 577 N.E.2d 569 (Ind.1991). In *Bowman v. State*, the defendant was the driver in a one-car accident in which his passenger, who was not wearing a safety belt, sustained injuries. Bowman was convicted of operating a vehicle while intoxicated, causing death and operating a vehicle with blood alcohol level of .10% or more, resulting in death. In part, he challenged his convictions on the grounds that the trial court erroneously denied a jury instruction on causation that informed the jury to find him not guilty if his passenger's failure to wear a safety belt was the cause of her death. On appeal, we held that the trial court properly denied the instruction because it was "clearly foreseeable" that a passenger might fail to wear a safety belt and, therefore, it was not an intervening and su-

perseding cause. *Id.* at 313. We reiterated this holding when faced with similar arguments in *Green v. State* and *Warner v. State*. Accordingly, under Indiana law, it is clearly foreseeable that a passenger in a motor vehicle might not wear a safety belt.

Despite the *Bowman* line of cases, Ford claims that use of the misuse instruction is supported in a products liability case based on our holding in *Hopper v. Carey*. In *Hopper*, Bernard Hopper was driving a fire truck on a non-emergency run. His son, George, was a passenger in the truck. Although the fire truck was equipped with safety belts, they were not wearing them. An accident occurred injuring both Bernard and George. They filed a complaint with a products liability claim against the manufacturer of the fire truck. A motion in limine was filed seeking an order to support the admission of Bernard and George's failure to wear the safety belts in order to show fault. The trial court granted the motion. On appeal, we reviewed the motion in limine. *Id.* at 570. We were unable to determine whether the evidence of the failure to use a seat belt was admissible in a products liability claim. *Id.* at 576. However, we stated that it could be admissible to demonstrate incurred risk or to negate the element of causation. *Id.* at 577. Thus, in *Hopper* we were examining the admission of seat belt evidence and the incurred risk defense in a products liability case.

Here, by contrast, the admission of the evidence that Morgen was not wearing his safety belt is not being challenged and we are examining the safety belt evidence in the light of the misuse defense, not the incurred risk defense. The misuse defense and the incurred risk defense are two distinct defenses. Each defense is established in a separate code section.

Indiana Code § 34–20–6–3 [2] addresses incurred risk while Indiana Code § 34–20–6–4 [3] addresses misuse. Based on these statutory definitions, the two defenses are distinguishable because knowledge of a product's defect is an essential element of establishing incurred risk, but is not necessary to establish misuse. Accordingly, *Hopper* is distinguishable from the current case and is inapplicable to our precise issue.

Ford also cites cases from other jurisdictions, which have concluded that a plaintiff's failure to wear a safety belt may be a misuse presented to a jury. *See e.g., Brown v. Ford Motor Co.,* 67 F.Supp.2d 581, 582 (E.D.Va.1999), *aff'd,* 10 Fed.Appx. 39 (4th Cir.2001) (finding that under Virginia law evidence of pickup driver's failure to wear a safety belt was admissible in an action against the manufacturer as it relates to product misuse); *Melia v. Ford Motor Co.,* 534 F.2d 795, 797 (8th Cir.1976) (stating that under Nebraska law it was proper for the jury to determine whether the decedent misused the product by failing to use a safety belt); *Gen. Motors Corp. v. Walden,* 406 F.2d 606, 609 (10th Cir.1969) (holding that under Arizona law the court properly instructed the jury that the plaintiff's failure to wear a safety belt could be a misuse); *Roberts v. May,* 41 Colo.App. 82, 583 P.2d 305, 307 (1978) (concluding that under Colorado law where the manufacturer claimed misuse, the plaintiff's voluntary choice of accepting the risk associated with not wearing a safety belt was for the jury to determine).

■ However, we are not bound by decisions from other jurisdictions especially when we have previously held that not wearing a safety belt is foreseeable. Moreover, we note that in Arizona and Colorado product misuse is part of a comparative fault system. *See Jimenez v. Sears, Roebuck & Co.,* 183 Ariz. 399, 904 P.2d 861, 871 (1995); *States v. R.D.Werner Co., Inc.,* 799 P.2d 427, 430 (Colo.Ct.App. 1990). Thus, in these jurisdictions the jury may use the misuse evidence in determining the fact and amount of a plaintiff's recovery. We are not persuaded by these cases because in Indiana misuse of a product is a defense that completely bars a products liability claim. *Indianapolis Athletic Club, Inc. v. Alco Standard Corp.,* 709 N.E.2d 1070, 1072 (Ind.Ct.App.1999), *trans. denied.* This is so because it is considered an unforeseeable intervening cause that relieves the manufacturer of liability. *Id.* We, therefore, conclude that the trial court erred by giving the misuse instruction because under Indiana law Morgen did not have a duty to wear a safety belt in the backseat and it is foreseeable that a passenger might not wear a safety belt.

Finally, Ford contends that giving this instruction merely resulted in harmless error. Ford relies on *Indianapolis Athletic Club* to illustrate the harmless error doctrine with respect to the misuse defense. In *Indianapolis Athletic Club,* a fire occurred at the Indianapolis Athletic Club. Although investigators were unable to de-

---

2. Ind.Code § 34–20–6–3 states:
 It is a defense to an action under this article (or IND.CODE 33–1–1.5 before its repeal) that the user or consumer bringing the action:
 (1) knew of the defect;
 (2) was aware of the danger in the product; and
 (3) nevertheless proceeded to make use of the product and was injured.

3. Ind.Code § 34–20–6–4 states:
 It is a defense to an action under this article (or IND.CODE 33–1–1.5 before its repeal) that a cause of the physical harm is a misuse of the product by claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party.

termine the cause of the fire, they found that the fire originated behind a refrigerator that had been manufactured by Alco Standard Corporation. The Athletic Club filed a claim against Alco alleging a defect in the refrigerator's electrical cord caused the fire. Alco relied on the misuse defense, claiming that the refrigerator could have been moved causing a crimping of the electrical cord. During the trial, no direct evidence was introduced that crimping occurred to the cord. The jury found in favor of Alco.

On appeal, the Athletic Club argued that the trial court erred by instructing the jury on the misuse defense because there was no evidence introduced at trial to support the instruction. We concluded that there was insufficient evidence to support the instruction because there was no evidence that the cord was crimped and moving a refrigerator cannot be considered a misuse of the product. *Id.* at 1073. Although we determined the instruction was given in error, we held that it was a harmless error because the instruction correctly stated the law and no prejudice resulted from the giving of the instruction where no evidence supported it. *Id.*

This case can be distinguished from *Indianapolis Athletic Club.* In *Indianapolis Athletic Club,* there was no direct evidence presented of the alleged misuse. Because no evidence was presented that could mistakenly be viewed as misuse, the instruction could not have influenced the jury. In this case, however, evidence was presented to the jury of the alleged misuse when evidence that Morgen was not wearing a safety belt was admitted at trial. Thus, *Indianapolis Athletic Club* is not controlling.

Despite an erroneous instruction, there is no cause to reverse a case for a new trial where the verdict of the jury was correct. *Hoffman v. E.W. Bliss Co.,* 448 N.E.2d 277, 284 (Ind.1983). In order to determine if the error of giving an instruction is cured by the verdict, we must examine the record and evidence to see if the verdict could have been based on the erroneous instruction. *Id.* When there is only a general verdict and there is conflicting evidence, it is impossible to tell which facts the jury believed existed. *Id.* In such cases, the possibility that the verdict was premised on the erroneous instruction precludes application of the "error cured by the verdict" rule. *Id.*

In this case, the jury returned a general verdict. It is not possible to hold that the erroneous instruction was harmless error because the verdict may have been based on the jury's finding that the product was not defective or, in the alternative, the verdict may have been based on Morgen's misuse of the Escort by failing to wear his safety belt. It is, therefore, possible that the verdict could have differed without this instruction. Thus, we reverse and remand for a new trial.

Although this issue is dispositive, we address the other jury instruction issues as they are likely to arise on retrial.[4]

## II. The Duty to Warn Jury Instruction

Morgen contends that the trial court erroneously refused to instruct the jury that Ford had a duty to warn of latent dangers. Morgen offered the following jury instructions, which the trial court denied because in the court's opinion this was not a warning case, but rather a design defect case. Record at 4460–61.

---

4. Morgen also argues that the trial court erred by refusing to allow him to rebut testimony from Ford's expert regarding injury causation. However, this issue is not likely to reoccur at trial. Therefore, we do not reach this issue on appeal.

### Instruction No. 6

You may find that Ford Motor Company, because of its technical knowledge as designer, manufacturer and distributor, knew or should have known of the dangers posed by the 1984 Escort in reasonably foreseeable rear end collisions and also knew that consumers such as Morgen, without the benefit of such technical information, could not have known of those dangers. If you so find, then you may find that Ford Motor Company owed the duty to warn of such dangers posed by the 1984 Escort.

Record at 1204.

### Instruction No. 13

Although a manufacturer is under no duty to warn of apparent dangers, a manufacturer has the duty to guard against hidden defects and give notice of concealed dangers.

Record at 1118. This is a pattern instruction. *See* Ind. Pattern Jury Instruction 7.34 (2d ed.1989).

Again, we will reverse a trial court's refusal to give a tendered instruction when (1) the instruction is a correct statement of the law, (2) it is supported by the evidence, (3) it does not repeat material adequately covered by other instructions, and (4) the substantial rights of the tendering party would be prejudiced by the failure to give the instruction. *Marshall*, 680 N.E.2d at 1104.

Morgen asserts that these instructions correctly state the law, and Ford does not dispute this claim. Rather, Ford maintains that the instructions "literally turn[] every design defect case into a warnings case." Appellee's Br. at 24. In making this argument, Ford relies on *American Motors Corp. v. Ellis*, 403 So.2d 459 (Fla. Dist.Ct.App.1981), *rev. denied.* In *Ellis*, the Court of Appeals of Florida addressed whether the trial court erred in instructing the jury as to American Motor's failure to warn of a defect in an AMC automobile. The Florida court held that there was no causal relationship between breach of a duty to warn and the injury sustained without evidence that a warning would have prevented the owner of the car from purchasing or driving the vehicle. *Id.* at 466. The court stated, "only if we were to engage in the speculation that the owner, properly warned, would not have purchased the car, or would not have allowed it to be driven on interstate highways, could we recognize a causal relationship between breach of a duty to warn and the instant injury." *Id.* at 469.

■ The current case is distinguishable from *Ellis.* In this case, we have evidence that Morgen would not have sat in the backseat of the Escort if a warning had been provided. Specifically, Janet Snyder, the owner of the Escort testified that if she had known that in a rear impact the backseat might raise five inches, she would not have purchased the car, nor would she have let Morgen sit in the backseat of the Escort. Moreover, Morgen testified that if he had been warned of any possible defect or problem in the rear seat of the Escort he would not have ridden in the vehicle. Accordingly, unlike in *Ellis*, the testimony of Snyder and Morgen provides the causal relationship between the breach of the duty to warn and the injury sustained to support giving the warning instruction. Thus, we are not persuaded by Ford's argument that the instructions turn every design defect case into a warning case.

Ford also argues that there was no evidence that Ford knew or should have known of a danger and, thus, the instructions are not supported by the evidence. Morgen relies on Ford's FMVSS 301 testing of the pre-production Escorts to show

that Ford had knowledge the Escort posed a risk of serious head and neck injuries to rear seat passengers. However, Ford asserts that the results of the FMVSS 301 test fail to provide this evidence because it is a fuel integrity test, not an occupant protection test. However, Morgen's expert, Stephen Syson, testified that crash tests run on the first generation Escort revealed that there was vertical movement of seven to eight inches of the gas tank in the thirty-five mile hour test and about three to four inches in the thirty mile an hour test. In addition, Morgen's expert, Robert J. Caldwell, testified that the structure of the car buckles into an inverted V shape causing it to intrude directly into the occupant space and directly affect any rear seat occupant. Therefore, the evidence supported these instructions.

Despite the fact that the instruction correctly stated the law and there was evidence to support the giving of the instruction, Ford argues, nonetheless, that the substance of the instruction was covered by another instruction and, therefore, the trial court did not err in refusing Morgen's duty to warn instructions. In particular, the trial court instructed the jury that:

A product is defective under this chapter if the seller fails to:

(1) Properly package or label the product to give reasonable warnings of danger about the product; or

(2) Give reasonably complete instructions on proper use of the product; when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer.

Record at 465. This instruction did not inform the jury of the information Ford needed to possess about defects in its product to trigger a duty to warn. However, this information was provided by Morgen's proposed instructions which ex-

plained that Ford had a duty to warn consumers of hidden dangers Ford knew or should have known about, but that a consumer could not have known about. Accordingly, Morgen's proposed instructions were not covered by the instruction given to the jury.

 In addition, Morgen's substantial rights were prejudiced by the failure to instruct the jury on the duty to warn regarding hidden defects. Without the instruction, the jury was left to speculate as to what knowledge Ford needed before its duty to warn consumers arose. In conclusion, the tendered instructions were a correct statement of the law, were supported by the evidence, were not covered by other instructions the trial court gave the jury, and without the tendered jury instructions Morgen's substantial rights were prejudiced. Upon retrial, the trial court should instruct the jury that Ford had a duty to warn of latent defects.

### III. Proximate Cause Jury Instruction

Next, Morgen argues that the trial court erred when it refused to instruct the jury that the accident could have had several proximate causes. The trial court refused the following instruction tendered by Morgen:

The term "proximate cause" means that cause which, in natural and continuous sequence, produces the injury complained of, and without which the result would not have occurred. The acts of the defendant, Ford Motor Company, need not be the sole proximate cause in order for Ford to be responsible for a result. There may be more than one proximate cause of an injury and a result.

Record at 1123, 1205. Instead, the trial court instructed the jury that:

Proximate cause is that act or omission which in natural and continuous sequence, unbroken by any efficient inter-

vening cause produces the injury complained without which the result would not have occurred.

If the evidence shows the injuries were caused solely by the conduct of Kim Possinger in driving the 1991 Honda Accord, Monterey Morgen cannot recover from Ford Motor Company for his injuries.

Record at 4630.

Specifically, Morgen contends that the instruction was erroneously excluded because the jury was not instructed that there can be more than one proximate cause and that it could find for Morgen even if it found that Kim Possinger and Ford were both causes of Morgen's injury. Morgen correctly points out that in *Jackson v. Warrum*, 535 N.E.2d 1207 (Ind.Ct. App.1989), we held that the plaintiff need not prove that the defective product was the sole proximate cause of the injury. Under concurrent tortfeasor liability more than one cause can proximately lead to an injury and the defendant's act need not be the sole proximate cause. *Id.* at 1220 (citations omitted).

Ford argues that the instruction given by the trial court implicitly contains the concepts Morgen sought to introduce through his instruction and, therefore, sufficiently addressed the proximate cause issue so as to inform the jury that there could be more than one proximate cause. In support thereof, Ford cites *Conder v. Hull Lift Truck, Inc.*, 435 N.E.2d 10 (Ind. 1982). In *Conder*, the court instructed the jury that if the plaintiff's injuries were solely and proximately caused by the conduct of defendant Hull Lift Truck, Inc., or the plaintiff himself or that of his employer or any combination of these, then the verdict should be for the defendant, Allis–Chalmers Corporation. The plaintiff argued that the instruction told the jury that contributory negligence was a defense to a strict liability theory of products liability.

However, the court also instructed the jury that contributory negligence was not a defense to a defective product theory of recovery. The supreme court found that the jury instruction properly instructed the jury when read with the other instruction. *Id.* at 17. In reaching this conclusion, the supreme court acknowledged that the instruction informed the jury that if the sole proximate cause of the accident was from sources other than Allis–Chalmers, then the verdict should be in favor of Allis–Chalmers. *Id.*

 Here, the court instructed the jury that Morgen could not recover from Ford if the evidence showed his injuries were caused "solely" by the conduct of Kim Possinger. The use of the word "solely" in this specific instruction informed the jury that there could be more than one proximate cause. Similar to the instruction used in *Conder*, the instruction in this case informed the jury that if the only proximate cause of the accident was from a source other than Ford, namely Possinger's driving, then Morgen could not recover from Ford.

However, although the instruction may have been adequate under *Conder* and implicitly advised the jury that there could be more than one proximate cause, it would be clearer if the jury instruction said so in the manner set forth in Morgen's proposed instruction. Therefore, although the trial court did not erroneously instruct the jury in this case, it would be preferable, at the future trial, to specifically instruct the jury that there can be more than one proximate cause of an injury.

Judgment reversed and remanded.

DARDEN, J., and MATHIAS, J., concur.