**Kevin PHILLIPS, Plaintiff–Appellant,**

**v.**

**CAMERON TOOL CORPORATION, Defendant–Appellee.**

**No. 90–1002.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 6, 1991.

Decided Dec. 10, 1991.

---

Richard A. Smikle (argued), Ellen W. Quigley, James R. Fisher, Gregory A. Castanias, Ice, Miller, Donadio & Ryan, Stephen Gerald Gray, Indianapolis, Ind., for plaintiff-appellant.

Nicholas C. Nizamoff (argued), Keith A. Gaston, Thomas J. Grau, White & Raub, Indianapolis, Ind., for defendant-appellee.

Before BAUER, Chief Circuit Judge, POSNER, Circuit Judge, and MORAN, Chief District Judge.*

MORAN, Chief District Judge.

Plaintiff lost much of his left leg in an Indiana industrial accident in 1988. He was, on September 14, 1988, assigned to set up a die in a press for a metal-stamping operation. The die, designed and manufactured by defendant, consisted of two shoes. The upper half of the die or upper die shoe weighed 7,300 pounds and the lower half or lower die shoe weighed 6,500 pounds. When such a die was delivered the shoes were clamped together by metal straps bolted into the edge of the shoes. Bolts threaded into the resulting bolt holes in the lower die shoe were thereafter used to lift the die onto the press when changing dies. During metal-stamping operations there had to be a means of raising the upper die shoe so as to permit the removal of a stamped piece and the insertion of a new blank. This was accomplished by a set of springs and a pressurized gas system which pushed the top shoe upward from the bottom shoe. Nitrogen gas under high

---

* The Honorable James B. Moran, Chief Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

pressure was released when the top shoe was compressed upon the bottom shoe.

When plaintiff went to install the die he raised the die with a crane rig attached to four bolts. According to defendant's evidence, at least two of the bolts were undersized or not threaded into the hole to a proper depth. The die fell and the impact activated the pressure system causing the upper shoe to land on plaintiff's leg.

In this diversity strict liability action plaintiff claimed, among other things, that the die was defectively designed because the lifting devices should have been an inherent part of the die, the die should have had safety devices to hold the shoes together when moved about the plant, and the die should have been designed with instructions and warnings concerning the use of proper size bolts and/or safety devices to transport the die. Defendant's responses included the contentions that plaintiff, an experienced operator, had misused the die in an unforeseeable manner and that he incurred the risk of his actions; that the die was not unreasonably dangerous in that the alleged defects were open and obvious; and that the die design was state of the art.

■ We state the facts very briefly because this appeal concerns instructions. The first issue relates to the state-of-the-art instructions. The trial was in November 1989. Then, as now, under Indiana law a defendant may assert a "state of the art" defense to a strict liability claim. Ind.Code § 33–1–1.5–4(b)(4). The statute does not define "state of the art" and there was, in 1989, some confusion among courts and commentators about the meaning of the term. *See* 1A L. Frumer & M. Friedman, *Products Liability*, § 2.26[8][b] at 2–1666 to 2–1670 (1991). Most considered it as signifying existing technological capability, but some related it to then-existing standards of the industry. In November 1989, Indiana had not expressly adopted either standard, although Indiana Pattern Jury Instruction 7.05 had recently cast its lot with the technological capability standard. Because the law was unsettled, the trial court opted not to define "state of the art,"

although plaintiff offered an instruction substantially similar to, although not precisely the same as, the pattern instruction. The court left the fleshing-out of the concept to the arguments of counsel.

■ A few months later, the concept of industry practice was expressly rejected in *Montgomery Ward & Co. v. Gregg*, 554 N.E.2d 1145, 1155 (Ind.App. 1st Dist.1990). The court there embraced the concept of technological advancement inherent both in the pattern instruction and the instruction offered by plaintiff here.

■ Defendant now urges that no definition of "state of the art" was necessary because the court in *Gregg* and the plaintiff's counsel in closing argument here both recognized that the term has a plain meaning. The problem with that contention is that defendant also argued "state of the art" to the jury, and defendant's standard differed from the "plain meaning" in *Gregg*. After considerable evidence that defendant's design conformed to the general practices of the industry its counsel contended in closing argument that it was not defective because it complied with industry standards and customs, that it was state of the art. Nowhere did defendant suggest that technological capability was relevant to determining state of the art. The jury was left to choose between differing legal standards when, we now know, a single legal standard controlled. Because the jury may well have relied upon an erroneous understanding of the law, we believe that the failure to instruct on the meaning of "state of the art" had an effect upon the substantial rights of the parties and requires reversal.

■ Intervening events have likewise caused the trial court's "open and obvious danger" instruction to now be erroneous, although it was correct when given. In *Bemis Co., Inc. v. Rubush*, 427 N.E.2d 1058 (Ind.1981), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982), the Indiana Supreme Court concluded that a product was not unreasonably dangerous and therefore no warnings were required if, objectively viewed, the dangers were

open and obvious. *Bemis*, 427 N.E.2d at 1061–64. The trial court here gave a *Bemis* instruction:

> The law does not require a manufacturer to warn of dangers or hazards which are open and obvious in the use of a product or which are personally known to the user.

> A product is not unreasonably dangerous, and therefore, is not defective, if the danger is open and obvious. The plaintiff must establish a latent, or hidden, danger in order to prove that the product was defective. In determining whether the danger was open and obvious, you may consider both this particular plaintiff's knowledge about the product and the objective knowledge that a reasonable person would possess in circumstances similar to the plaintiff's. If you find that this plaintiff had actually knowledge of the danger or that a reasonable person in circumstances similar to the plaintiff's circumstances would have known of the danger, then the danger is not hidden, and you should find for the defendant.

> On the other hand, if you find that the plaintiff did not actually know about the danger and that the reasonable person in circumstances similar to the plaintiff's circumstances would not have known about the danger, then you should find the danger was hidden.

Subsequent to the trial, the Indiana Supreme Court decided *Koske v. Townsend Engineering Co.*, 551 N.E.2d 437 (Ind. 1990), *FMC Corp. v. Brown*, 551 N.E.2d 444 (Ind.1990), and *Miller v. Todd*, 551 N.E.2d 1139 (1990). Noting that the injuries in *Bemis* occurred before the adoption, in 1978, of the Indiana Product Liability Act, the Court in *Koske* concluded that under the Act an open and obvious danger does not necessarily negate liability although it bears upon the manufacturer's expectation of potential use and upon a user's subjective appreciation of the risk and his voluntary acceptance of it. *Koske,* 551 N.E.2d at 441–42. In *FMC Corp.* the Court noted that feasible safeguards, not adopted, may cause a product having an open and obvious danger to be unreason-

ably dangerous and therefore defective. *FMC Corp.*, 551 N.E.2d at 446. That concept was further developed in a different context in *Miller. See Miller,* 551 N.E.2d at 1143. *See also Rogers v. R.J. Reynolds Tobacco Co.*, 557 N.E.2d 1045, 1051–52 (Ind.App.2d Dist.1990); *Lilge v. Russell's Trailer Repair, Inc.*, 565 N.E.2d 1146, 1150 (Ind.App. 4th Dist.1991).

■ That change in the law was applied by this court to reverse a summary judgment for a manufacturer in *Lovell v. Marion Power Shovel Co., Inc.*, 909 F.2d 1088 (7th Cir.1990), even though the trial court's judgment was correct when entered, and by the court below to deny a motion to dismiss in *Spangler v. Sears, Roebuck and Co.*, 752 F.Supp. 1437 (S.D.Ind.1990). Both in Indiana and in the federal courts an appellate court in a civil case ordinarily follows intervening controlling law. Indiana decisions may rest upon the legal fiction that the last decision is considered to have stated the law as it always existed, but the ultimate conclusion is clear: the latest decision on an issue of civil law has retroactive effect unless it would impair a contract made or vested rights acquired in reliance upon an earlier decision. *Don Medow Motors, Inc. v. Grauman,* 446 N.E.2d 651, 654–55 (Ind.App.3d Dist.1983); *Farm Bureau Ins. Co. v. Crabtree,* 467 N.E.2d 1220, 1223–24 (Ind.App.3d Dist.1984); *J. Yanan & Associates, Inc. v. Integrity Ins. Co.,* 771 F.2d 1025, 1034 (7th Cir.1985).

■ Defendant argues that any error in the *Bemis* instruction was waived because plaintiff did not object on the grounds he now advances. That he did not so object is true enough, but he did not need to do so. Rule 51 of the Federal Rules of Civil Procedure does not require a party to be clairvoyant; parties need not state numerous objections to settled law in hopes that something may change while an appeal is pending. A failure to object to an instruction waives the objection if it could have led to a correction of error. But here the trial court was constrained to follow *Bemis;* there was then no error to correct. The objections now advanced were not waived.

*Brown v. M & M/Mars,* 883 F.2d 505, 512–13 (7th Cir.1989); *Robinson v. Heilman,* 563 F.2d 1304, 1307 (9th Cir.1977).

We reverse and remand for a new trial.