# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**W. SCOTT MONTROSS**
Montross Miller Muller
Mendelson & Kennedy, LLP
Indianapolis, Indiana

**JOHN F. TOWNSEND, III**
Townsend & Townsend
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JULIA BLACKWELL GELINAS**
**KEVIN C. SCHIFERL**
**MAGGIE L. SMITH**
Frost Brown Todd LLC
Indianapolis, Indiana



FILED

Apr 11 2012, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ANTHONY WADE, | ) |
| | ) |
| Appellant-Plaintiff, | ) |
| | ) |
| vs. | ) No. 29A05-1101-CT-72 |
| | ) |
| TEREX-TELELECT, INC., | ) |
| | ) |
| Appellee-Defendant. | ) |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable William J. Hughes, Judge
Cause No. 29D03-1004-CT-445

April 11, 2012

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

This appeal originates from a complaint alleging that Terex-Telelect, Inc. ("Terex") was negligent under the Indiana Product Liability Act in the design of the liner of an aerial passenger bucket attached to a truck from which Anthony Wade ("Wade") fell and was rendered a quadriplegic. Wade appeals from a jury verdict in favor of Terex and asserts that the trial court erred when it denied his partial motion for directed verdict and instructed the jury regarding the rebuttable presumption under Indiana Code section 34-20-5-1 that the product was not defective. Wade raises the following restated and consolidated issue: whether the trial court erred in instructing the jury because no evidence was presented to show that the liner was state of the art or in compliance with government standards.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY[1]

Terex is the manufacturer of buckets and booms used by utilities and construction companies to access elevated work areas. The buckets and booms allow linemen to work on utility lines and equipment that could not be reached from standing on the ground. A bucket is attached by a retractable boom to a truck, and the bucket is cradled on top of the truck for transport. When cradled, the bucket is approximately twelve feet above the ground.

In 1994, Richmond Power & Light ("Richmond Power") purchased a double-man bucket truck ("Truck 32"). After reviewing brochures regarding the products available,

---

[1] On January 19, 2012, we held oral argument in this matter at Purdue University's Krannert Graduate School of Management. We extend many thanks. First, we thank counsel for the quality of the oral and written arguments, for participating in post-argument discussions with the audience, and for commuting from Indianapolis. We especially thank the Krannert Executive MBA Program for their accommodations and the students in the audience for their thoughtful post-argument questions.

2

Richmond Power prepared detailed specifications for the type of truck desired. A bid was submitted by a distributor that complied with the specifications and included an aerial lift and bucket manufactured by Terex. This distributor was ultimately awarded the contract. Richmond Power specified that the bucket in Truck 32 contain a polypropylene dielectric/insulating liner. The use of a dielectric liner is very important for utility companies purchasing bucket trucks because of the danger of a lineman being electrocuted by power lines. To maintain dielectric integrity, holes or openings in the liner are avoided because they would expose the occupant to electrical contact.

Richmond Power's specifications included an exterior step, and the bucket produced to meet these specifications had a molded exterior step with an interior recess that extended into the hollowed out portion of the exterior step. Richmond Power's specifications did not include an interior step for the bucket or the liner. The interior recess for the exterior step was completely covered by the dielectric liner requested by Richmond Power. A molded interior step or a portable interior step were available options, but Richmond Power did not specify that it desired either.

On August 25, 1997, Wade was employed by Richmond Power as an apprentice lineman. As part of his employment, Wade installed various types of equipment for Richmond Power, which sometimes involved the use of a bucket truck. When working in the bucket, linemen were attached to the bucket through the use of a lanyard and harness. The reason for wearing the lanyard is to ensure that the lineman does not fall to the ground if he were to lose his balance and fall. On the date at issue, Wade was working on the installation

3

of a transformer approximately thirty feet off the ground. He was working from inside a double-man bucket attached to Truck 32. After finishing the installation, the bucket was lowered to the cradling position on top of the truck, with the top of the bucket approximately twelve feet above the ground. When the bucket was cradled, Wade replaced his tools in a tool apron that hung inside the bucket, removed his safety goggles, detached his lanyard, and prepared to exit the bucket. While attempting to exit the bucket, Wade missed the exterior step completely and fell twelve feet to the ground. As a result of this fall, Wade was rendered quadriplegic.

On July, 9, 1999, Wade filed a complaint against Terex and Dueco, Inc. ("Dueco"), a distributor of Terex products, alleging that Terex was negligent under the Indiana Product Liability Act in the design of the bucket, which injured Wade.[2] Wade contended that the interior recess for the exterior step was in fact an interior step and that the lack of a molded interior step on the insulating dielectric liner caused this interior step to be covered up, which led to his fall. Wade alleged that, because Terex had sold liners with molded interior steps to other customers, Terex should not have allowed the sale of an insulating dielectric bucket liner that contained no molded interior step.

A jury trial commenced on June 16, 2010. At trial, Terex presented evidence that, in providing an insulating dielectric bucket liner without an interior step, it was complying with Richmond Power's specifications for the product desired. Evidence was presented that it was common in the industry for an entity specifying and purchasing such equipment to require

---

[2] In 2006, Dueco settled with Wade and was dismissed from the lawsuit; Terex subsequently named Dueco as a non-party defendant.

that the aerial lift and bucket be manufactured to meet the American National Standards Institute ("ANSI") Standard A92.2 ("ANSI A92.2"). *Appellant's App*. at 581. ANSI is an independent entity that works in conjunction with the United States government, serves as the official representative of the United States to the International Standards Organization, and accredits various committees, which draft standards that are then approved and published as ANSI standards. *Id*. at 567. ANSI A92.2 applies to vehicle-mounted elevating and rotating aerial devices, commonly referred to as bucket trucks. *Id*. at 568. The evidence showed that the primary objective of this standard is to provide users, operators, manufacturers, sellers, inspectors, and others with instruction as to how the machines are to be manufactured, used, and maintained. *Id*. Any aerial device manufactured after January 2, 1990 must follow the requirements of the standard to be compliant with the 1990 version of ANSI A92.2. Truck 32 was manufactured during the relevant time period covered by the 1990 version.

Forest Carr ("Carr"), a board-certified safety professional, stated at trial that he had reviewed ANSI A92.2 and the applicable Occupational Safety and Health Administration ("OSHA") regulations and that, in his opinion, the bucket on Truck 32 complied with the standards. *Tr*. at 1268, 1276-77, 1290. He also testified that he believed that buckets without interior steps were perfectly safe. *Id*. at 1290. Carr further expressed concern that, if an interior step was introduced to the bucket, it would be available not only when the bucket is cradled, but also when linemen are in the air and doing work, which could put lineman at more risk of falling out of bucket. *Id*. at 1298, 1327.

5

Norman Hargreaves ("Hargreaves"), an engineer and a former director of product safety for Terex from 1992 to 2006, testified that he had inspected the design of the bucket on Truck 32, which did not contain an interior step, and that, in his opinion, an individual could safely enter and exit the bucket. *Id*. at 865. He further testified that he believed that the Terex design with no interior step used in Truck 32 was a safe design and not unreasonably dangerous to linemen in 1995. *Id*. at 871-72.

Gary Alexander ("Alexander"), a long-time member of ANSI and the immediate past chairman of the subcommittee that drafted ANSI A92.2, testified that the bucket on Truck 32 met all of the dimensional requirements contained within ANSI A92.2 and also complied with the standard in all other respects. *Appellant's App*. at 572. He also stated that the design utilized by Terex on Truck 32 was used by other manufacturers during the time period from 1981-1995 and that ANSI A92.2 did not dictate a design for ingress or egress that must be used by the manufacturers. *Id*. at 572-73.

At the conclusion of the evidence, Wade made a motion for directed verdict, contending that there was a lack of any evidence to support Terex's claim that its product was in conformity with the generally recognized state of the art applicable to the safety of the product. The trial court overruled the motion. Wade also objected to Terex's tendered final jury instruction pertaining to the rebuttable presumption associated with the product being state of the art and in compliance with government standards. This objection was overruled, and the trial court adopted Terex's tendered instruction as Final Instruction 26. It stated as follows:

6

Terex has alleged that its bucket was manufactured in conformity with the state of the art and that the bucket complied with applicable codes. Terex has the burden of proving these allegations. If you find that Terex has proved by a preponderance of the evidence that before Terex sold the bucket it:

(1)     was in conformity with the generally recognized state of the art applicable to the safety of the bucket at the time the product was designed, manufactured, packaged, and labeled; or

(2)     the bucket complied with applicable codes, standards, regulations, or specifications established, adopted, promulgated, or approved by the United States or Indiana, or by an agency of the United States or Indiana,

then you may assume the bucket was not defective or that Terex was not negligent and find for the Defendant. However, if Plaintiff has introduced evidence tending to disprove the above proposition, then you may, but are not required to, find the product was defective.

*Appellant's App*. at 291. At the conclusion of the trial, the jury returned a verdict that allocated zero fault to Terex, zero fault to Dueco, and 100% fault to Wade. Wade now appeals.

## DISCUSSION AND DECISION

The Indiana Product Liability Act provides for a rebuttable presumption that a product is not defective if it was manufactured in conformity with the state of the art or if it complied with governmental standards:

In a product liability action, there is a rebuttable presumption that the product that caused the physical harm was not defective and that the manufacturer or seller of the product was not negligent if, before the sale by the manufacturer, the product:

(1)     was in conformity with the generally recognized state of the art applicable to the safety of the product at the time the product was designed, manufactured, packaged, and labeled; or

7

(2) complied with applicable codes, standards, regulations, or specifications established, adopted, promulgated, or approved by the United States or by Indiana, or by an agency of the United States or Indiana.

Ind. Code §34-20-5-1.

Wade argues that the trial court erred in instructing the jury as to the rebuttable presumption under Indiana Code section 34-20-5-1. When determining whether error resulted from the giving of an instruction, we use the following three-prong test: (1) whether the tendered instruction correctly states the law; (2) whether there is evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions which are given. *R.R. Donnelley & Sons Co. v. N. Texas Steel Co.*, 752 N.E.2d 112, 139 (Ind. Ct. App. 2001), *trans. denied* (2002). The decision to give a particular instruction rests within the trial court's sound discretion. *Id.* We review this decision only for an abuse of that discretion. *Id.* The giving of instructions will be reversed only if the instructions given, as a whole, failed to advise the jury of the applicable law or misled the jury. *Id.* We note that a trial court may be justified in giving an instruction if there is any evidence to support the instruction. *Id.*

## I. State of the Art

Under subsection (1), manufacturers such as Terex are entitled to a rebuttable presumption that their product was not defective, and they were not negligent, if their product was manufactured in conformity with the generally recognized state of the art. Ind. Code § 34-20-5-1(1). Although the statute does not define state of the art, Indiana courts have defined the term to mean "the best technology reasonably feasible" at the time the defendant

8

designed, manufactured, packaged, and/or labeled the product at issue. *Indianapolis Athletic Club, Inc. v. Alco Standard Corp.*, 709 N.E.2d 1070, 1074 (Ind. Ct. App. 1999). State of the art is not a legal term of art meaning industry custom and practice. *Id.* (citing *Montgomery Ward & Co. v. Gregg,* 554 N.E.2d 1145, 1155 (Ind. Ct. App. 1990), *trans. denied* (1991)). "Rather, the courts have 'embraced the concept of technological advancement' in defining state of the art." *Id.* (citing *Phillips v. Cameron Tool Corp.,* 950 F.2d 488, 490 (7th Cir.1991)). Evidence of the existing level of technology, industry standards, the lack of other advanced technology, the product's safety record, and the lack of prior accidents may be presented in order to prove that a product is state of the art. *Weller v. Mack Trucks, Inc.*, 570 N.E.2d 1341, 1343 (Ind. Ct. App. 1991).

Wade argues that no evidence was presented to support the giving of the jury instruction on the rebuttable presumption under Indiana Code section 34-20-5-1. He contends that no evidence was presented to show that the liner manufactured by Terex without an interior step to facilitate egress from the bucket was either state of the art or that it complied with applicable government standards. Specifically, Wade alleges that none of Terex's witnesses presented evidence that the liner with no interior step was the best technology reasonably feasible to show that it was state of the art. Further, he claims that Terex did not present sufficient evidence that the liner at issue complied with any applicable government standards because neither of the standards cited by Terex was applicable to egress out of buckets or interior steps in buckets. Wade therefore asserts that the trial court

9

abused its discretion in instructing the jury as to the rebuttable presumption under Indiana Code section 34-20-5-1. We agree.

To claim the benefit of the statutory presumption, the defendant manufacturer must show that its product is the best technology reasonably feasible at the time it was manufactured. *Indianapolis Athletic Club*, 709 N.E.2d at 1074. In the present case, Terex presented evidence that, at the time that the liner at issue was manufactured, the liner was the best technology reasonably feasible in terms of its capacity for dielectric insulation and that almost all of the buckets with dielectric/insulating liners used by utility companies utilized the same technology as the liner in Truck 32 and that the same design concept had been used by basically all utility companies for years. *Tr.* at 864-65; 910.

While such evidence may well have established that the liner was state of the art for dielectric insulation, it was irrelevant to the issue before the court. Wade was not electrocuted. He fell. Wade made no claim that the dielectric insulation was defective or unreasonably dangerous. Rather, he claimed that the product was unreasonably dangerous and defective because the liner blocked the interior recess in the bucket that provided a step to facilitate egress from the bucket.

State of the art evidence must be relevant to the risk at issue. The fact that a product may be in conformity with the generally recognized state of the art applicable to a particular risk does not make it state of the art for all purposes. Thus, while the braking system on an automobile may be state of the art in terms of its ability to stop a car travelling at a designated rate of speed within a designated distance from the time the brakes are applied, such evidence

10

would not be relevant in a products liability case where the braking system caused a fire in the vehicle.

Terex's attempts to prove lack of other advanced technology by arguing concerns regarding electrocution are greater than concerns regarding falls similarly do not show that a liner without an interior step was the best technology reasonably feasible. While dielectric insulation is important in the utility industry, it was not relevant to the issue of egress out of the bucket. Here, the defect at issue was that the liner failed to provide a safe means of egress out of bucket, not its insulating capabilities.

Terex presented the testimony of several of its experts, namely Hargreaves, Carr, and Alexander, that they deemed the bucket design without an interior step to be safe for ingress and egress and not unreasonably dangerous. *Id*. at 871-72, 878-79, 1290; *Appellant's App*. at 573. No evidence was presented that there was a lack of other advanced technology to support that the liner at issue was the best technology reasonably feasible at the time it was manufactured. Indeed, evidence was presented that, at the time that the liner at issue was manufactured, Terex also manufactured a liner that contained an interior step, and that other products available in the market that incorporated an interior step to aid workers when exiting buckets. These included a liner with an interior step included in the bottom corner and hanging steps that could be added to a bucket. *Pl.'s Exs*. 20-23. The fact that Terex manufactured a liner with an interior step at the time that the liner at issue was manufactured shows that there was other advanced technology available.

11

There was no testimony that liners without interior steps are safer than those with such steps. Although Terex presented testimony by their experts that, if an interior step was included in the liner, it could possibly pose a risk that linemen could fall out of the bucket while working in the air, none of these experts testified that an interior step was actually less safe. *Tr.* at 1327; *Appellant's App.* at 576. There was no evidence that a liner without an interior step is the best technology reasonably feasible for ingress into and egress out of the bucket.

Terex introduced no evidence regarding the product's safety record and the lack of prior accidents pertaining to the buckets with the liner at issue because it was not able to meet the trial court's evidentiary foundational requirement of demonstrating that a satisfactory investigation had been conducted regarding whether and to what extent prior accidents involving the product had occurred.[3] It did present anecdotal evidence that the same technology had been used for almost thirty years and that it had sold approximately 40,000 buckets with the same liner and had not heard of a report of anyone falling while entering or exiting the bucket as Wade did. *Tr.* at 864, 878, 913. Evidence was also presented of studies done by the National Safety Council that contained instances of accidents involving falls occurring when exiting buckets; although some of the recounts of accidents did not contain many details to show they involved the same situation as the present case, they could still support an inference that other similar accidents have occurred previously.

---

[3] The trial court had granted a motion in limine to exclude evidence of the lack of prior accidents unless Terex was able to "establish a foundation that a satisfactory investigation [had] been performed to ascertain whether and to what extent prior accidents [had] occurred." *Appellant's App.* at 94.

12

We conclude that there was not sufficient evidence presented to support Terex's contention that the liner at issue was "in conformity with the generally recognized state of the art applicable to the safety of the product at the time [it] was designed, manufactured, packaged, and labeled." Ind. Code § 34-20-5-1(1). As a result, the trial court erred in instructing the jury that it could "assume the bucket was not defective or that Terex was not negligent" if it found that the product was in conformity with the generally recognized state of the art. *Appellant's App*. at 291.

## II. Compliance with Government Regulations

Terex also contended that it was entitled to the rebuttable presumption that its product was not defective and was not negligent under subsection (2) of Ind. Code §34-20-5-1, because its product "complied with applicable codes, standards, regulations, or specifications established, adopted, promulgated, or approved by the United States or by Indiana, or by an agency of the United States or Indiana." Ind. Code § 34-20-5-1(2). Specifically, Terex claimed that its design without an interior step was in compliance with ANSI A92.2, which was a standard that applied to any truck with an aerial device, such as Truck 32.

Although ANSI standards are not government standards or regulations, at all relevant times for this case, OSHA regulations provided, "Unless otherwise provided in this section, aerial devices acquired on or after July 1, 1975, shall be designed and constructed in conformance with the applicable requirements of . . . [ANSI A92.2] . . ., including appendix, which is incorporated by reference as specified in § 1910.6." 29 C.F.R. § 1910.67(b)(1).

The referenced section 1910.6 stated, "The standards of . . . organizations which are not agencies of the U.S. Government which are incorporated by reference in this Part, have the same force and effect as other standards in this Part." 29 C.F.R. §1910.67(a)(1). Thus, because OSHA regulations require compliance with ANSI standards for lift trucks, Terex argues that it is entitled to the statutory presumption. We do not agree.

As was the case above regarding state of the art evidence, for evidence of compliance with governmental standards to be relelvant, the standard itself must relate to the risk or product defect at issue. Here, it does not. While there was testimony that the primary objective of ANSI A92.2 was to prevent accidents associated with the use of buckets and to provide guidance as to how to safely manufacture, use, and maintain such buckets, this standard did not address the design issue in this case, namely, the egress out of buckets and the necessity of interior steps inside buckets to facilitate. *Appellant's App*. at 524, 568. Nowhere in either the OSHA regulations or ANSI A92.2 is there a requirement for or prohibition of an interior step in buckets or liners. Rather, the standards are silent regarding interior steps. As a result, there was no relevant evidence presented regarding any government standard applicable to interior steps in buckets or bucket liners. Therefore, there was not sufficient evidence presented to support Terex's contention that the liner at issue complied with applicable government regulations. We conclude that the trial court erred in instructing the jury as to the rebuttable presumption under Indiana Code section 34-20-5-1.

Having determined that there was insufficient evidence to support the instruction, we must next decide whether the instruction was prejudicial to Wade. "Although a jury

14

instruction may have been given in error, the error is not reversible unless the complaining party was prejudiced thereby." *Indianapolis Athletic Club*, 709 N.E.2d at 1073 (citing *Spirito v. Temple Corp.,* 466 N.E.2d 491, 493 (Ind. Ct. App. 1984), *trans. denied* (1985)). "Moreover, where an instruction presents a correct statement of law, but no evidence supports it, the objecting party is generally unharmed by the instruction." *Id.* Here, the instruction in this case was not harmless. By its specific language, the instruction allowed the jury to presume that Terex's product was not defective and that Terex was not negligent if the bucket liner was manufactured in conformity with state of the art or compliance with government regulations. This instruction was erroneous because it was unsupported by relevant evidence and went to the very heart of this case. Wade was prejudiced by instructing the jury as to the rebuttable presumption under Indiana Code section 34-20-5-1. We reverse the trial court's judgment and remand for a new trial.

Reversed and remanded.

VAIDIK, J., concurs.

BRADFORD, J., concurs in part and dissents in part with separate opinion.

15

# IN THE
# COURT OF APPEALS OF INDIANA

ANTHONY WADE, )
                                        )

    Appellant-Plaintiff, )

                               )

        vs. )     No. 29A05-1101-CT-72

                               )

TEREX-TELELECT, INC., )

                               )

    Appellee-Defendant. )

**BRADFORD, Judge, concurring in part and dissenting in part.**

Although I agree that Terex was not entitled to a "state of the art" instruction and so would remand for retrial in any event, I cannot agree that the trial court abused its discretion in instructing the jury regarding the rebuttable presumption that a product is non-defective if it conforms to applicable governmental regulations. Consequently, I respectfully dissent in part.

Terex produced evidence that its bucket complied with ANSI A92.2, the standard applicable to trucks with aerial devices, and the plain language of Indiana Code section 34-20-5-1(2) supports the giving of a regulatory compliance instruction under such circumstances. To deny a manufacturer a regulatory compliance instruction because the

16

regulations do not specifically address the risk at issue[4] would, in my view, run counter to clear legislative intent. I agree with the Tennessee Supreme Court's observation on that state's similar provision that such statutes are designed "'to give refuge to the manufacturer who is operating in good faith and [in] compliance of what the law requires him to do.'" *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 536 (Tenn. 2008) (quoting *Tuggle v. Raymond Corp.*, 868 S.W.2d 621, 625 (Tenn. Ct. App. 1992)) (brackets in *Tuggle*).[5] Terex introduced evidence that it manufactured the bucket up to ANSI A92.2 standards and so is entitled to a regulatory compliance instruction.

This is not to say, however, that Instruction 26 should have directed a verdict for Terex based on regulatory compliance, and, in fact, it did not. Wade was free to attempt to counter evidence of compliance, as Final Instruction 26 clearly provided, with evidence that the bucket either did not actually comply with ANSI A92.2 or was defective despite its compliance. In other words, Wade was given the opportunity to prove that a reasonable

---

[4] My interpretation of ANSI A92.2 is that it is entirely possible that ANSI considered the safety of ingress and egress in general and interior steps in particular in crafting the standard. The bucket specifications, particularly the requirement that the bucket walls be thirty-nine to forty-five inches high, seem to be an attempt to strike a balance between walls high enough to reduce the risk of falling out and low enough to allow for generally safe ingress and egress. Defendant's Ex. M p. 28. I believe ANSI recognized that no one bucket design could be completely safe for both purposes, however, as reflected in the provision that "[d]uring operation of the aerial device the operator shall wear a body belt or harness and be connected to the aerial device with a lanyard at the platform position." Defendant's Ex. M p. 22. As for interior steps, it seems entirely possible that ANSI considered them but rejected them as unsafe, given the following provision: "The operator shall not use railings, planks, ladders or *any other device in or on the work platform* for achieving additional working height or reach." Defendant's Ex. M p. 22 (emphasis added).

[5] Tennessee Code section 29-28-104(a) provides as follows:

> Compliance by a manufacturer or seller with any federal or state statute or administrative regulation existing at the time a product was manufactured and prescribing standards for design, inspection, testing, manufacture, labeling, warning or instructions for use of a product, shall raise a rebuttable presumption that the product is not in an unreasonably dangerous condition in regard to matters covered by these standards.

17

manufacturer would have installed an interior step in the bucket whether ANSI A92.2

mandated it or not.  As the Colorado Supreme Court has stated,

> a product may be in a defective condition unreasonably dangerous to the user
> or consumer notwithstanding the supplier's compliance with a safety
> regulation related to that product.  While undoubtedly compliance constitutes
> evidence that the product was not defective at the time of sale, it by no means
> is conclusive on the issue of defect.

*Blueflame Gas, Inc. v. Van Hoose*, 679 P.2d 579, 591-92 (Colo. 1984).[6]  On retrial, I would

hold that Terex is entitled to instruct the jury on regulatory compliance, assuming, of course,

that it presents the same or similar evidence on that question.

Because I believe that the trial court properly instructed the jury on regulatory

compliance, I respectfully dissent in part.

---

[6] Colorado's regulatory compliance statute provides, in relevant part, as follows:

(1) In any product liability action, it shall be rebuttably presumed that the product which
caused the injury, death, or property damage was not defective and that the manufacturer or
seller thereof was not negligent if the product:
(a) Prior to sale by the manufacturer, conformed to the state of the art, as distinguished from
industry standards, applicable to such product in existence at the time of sale; or
(b) Complied with, at the time of sale by the manufacturer, any applicable code, standard, or
regulation adopted or promulgated by the United States or by this state, or by any agency of
the United States or of this state.

Colo. Rev. Stat. § 13-21-403.