**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 24 2012, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**TINA M. BELL**
**DAVID W. STEWART**
Stewart & Stewart
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**EDWARD J. LIPTAK**
**JEREMY M. DILTS**
Carson Boxberger LLP
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LARRY EDWARD RUBLE, JR., Individually and as Administrator of the ESTATE OF NATASHA RUBLE, Deceased, | ) ) ) ) ) | |
| Appellant-Plaintiff, | ) ) | |
| vs. | ) ) | No. 53A05-1109-CT-488 |
| LORI THOMPSON, M.D., | ) ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Frances G. Hill, Judge
Cause No. 53C06-0407-CT-1271

**July 24 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Larry Edward Ruble, Jr. ("Larry"), individually, and as the administrator of the Estate of his deceased wife, Natasha Ruble ("Natasha") (collectively "the Estate"), appeals from the trial court's judgment on a defense verdict in a medical malpractice action against Lori Thompson, M.D. ("Dr. Thompson"), alleging a failure to make a timely diagnosis of liver cancer and failure to maintain medical records. The Estate presents the following restated issues for our review:

I.      Whether the trial court abused its discretion by limiting the scope of questions during Dr. Thompson's deposition; and

II.     Whether the trial court abused its discretion by refusing the Estate's tendered instructions on medical record keeping and increased risk of harm.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In September of 1998, Natasha, who was then fifteen years old, began seeing a family practice physician Dr. Thompson. Natasha's mother had been concerned that Natasha's former doctor was not providing adequate answers about the cause of Natasha's abdominal pain and discomfort and chose to change physicians. Natasha first saw Dr. Thompson on Thompson's first day in private practice after finishing her residency. Natasha was one of Dr. Thompson's three or five patients at that time.

In July of 2002, after twenty office visits in the course of approximately forty-six months, it was discovered that Natasha suffered from a slower growing form of liver cancer. A physician's assistant in Dr. Thompson's office requested a CT scan, which led to the discovery of Natasha's cancer. When the cancer was diagnosed, the cancerous lesion found

in her liver was approximately 18 centimeters in size. Lesions such as the one found in Natasha's liver can be discovered by use of a CT, MRI, and ultrasound when the lesion is as small as one centimeter. Dr. Kelly Wright, a liver surgeon, testified at trial that if the cancer had been diagnosed even one year earlier, Natasha would have had a greater than 50% chance of survival, because the cancer would not yet have metastasized. Dr. Dale Rouch testified that by November of 2001, Natasha's chance of survival had fallen to 5%.

Natasha married Larry on March 15, 2003. On April 30, 2004, Natasha died as a result of hepatocellular carcinoma, or liver cancer. The Estate filed a proposed complaint with the Department of Insurance alleging malpractice against Dr. Thompson on July 7, 2004.[1] The next day, the Estate filed its state court complaint against Dr. Thompson. The complaints alleged that during the time Dr. Thompson provided medical care and treatment to Natasha, Dr. Thompson failed to treat her in compliance with reasonable and accepted standards of medical care. The Estate deposed Dr. Thompson for more than five hours on August 26, 2008. On January 15, 2010, the medical review panel ("MRP") unanimously found that Dr. Thompson had failed to comply with the appropriate standard of care.

After the MRP issued its opinion, the complaint against Dr. Thompson proceeded in state court. On August 11, 2010, the trial court scheduled the matter for a five-day trial, which began on August 29, 2011. On July 22, 2011, the Estate requested a second deposition of Dr. Thompson, and the notice of deposition requested that it take place on July 28, 2011.

---

[1] The proposed complaint named other physician defendants, but the medical review panel unanimously found that none of the other physicians had failed to comply with the appropriate standard of care. Those physician-defendants were subsequently dismissed from the state court complaint.

On July 25, 2011, counsel for Dr. Thompson filed a motion for protective order and a motion to quash the notice. On July 28, 2011, a hearing was held and the trial court ruled that the deposition of Dr. Thompson could go forward, but the questions would be limited to the list of topics provided to the trial court and previously disclosed to Dr. Thompson's counsel. That deposition took place on August 18, 2011. During the deposition, the Estate attempted to ask questions that were beyond the list of topics that had been provided to counsel for Dr. Thompson and the trial court. Dr. Thompson's counsel instructed her not to answer those questions, and she did as instructed.

Also at the July 28, 2011 hearing, the Estate requested sanctions against Dr. Thompson as a result of her failure to produce during discovery a portion of the medical records applicable to her care and treatment of Natasha. The Estate asked for a default judgment or, in the alternative, that the burden of proof be shifted to Dr. Thompson as sanctions for the alleged discovery violation. An additional hearing was held on August 15, 2011, on the Estate's request for sanctions. Those requests were denied in the trial court's August 22, 2011 final pre-trial conference order.

On August 23, 2011, the Estate filed a motion to compel the answers to the deposition questions not answered by Dr. Thompson and to be relieved from the limitation on the right to depose her. That motion was denied on August 26, 2011. At the conclusion of the jury trial, the jury returned a defense verdict in favor of Dr. Thompson. The Estate moved for a judgment notwithstanding the verdict, which was denied by the trial court. The Estate now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

## I. Deposition Limitations

The Estate claims that the trial court abused its discretion by limiting the topics that could be covered in Dr. Thompson's August 18, 2011 deposition, and by denying the motion to compel the answers to the deposition questions not answered by Dr. Thompson and for relief from the limitation on the right to depose her. Dr. Thompson had been deposed when the proposed complaint was before the MRP. The Estate argued that because of the differing nature of the proceedings, questions which would be relevant in the state court proceedings were not asked in the previous deposition. The Estate contends that the trial court erred by failing to compel Dr. Thompson to answer questions that were not on the list of topics or that were derivative of the topics listed.

A trial court is accorded broad discretion when ruling on discovery issues, and we will interfere only when a party establishes that the trial court has abused that discretion. *Allstate Ins. Co. v. Scroghan*, 851 N.E.2d 317, 321 (Ind. Ct. App. 2006). We will find that a trial court abuses its discretion when it reaches a conclusion that is against the logic and the natural inferences that can be drawn from the facts and circumstances before it. *Old Ind. Ltd. Liab. Co. v. Montano ex rel. Montano*, 732 N.E.2d 179, 183 (Ind. Ct. App. 2000). Additionally, an abuse of discretion will be found when the trial court misinterprets or misapplies the law. *Id.* Because discovery matters are fact sensitive, the trial court's ruling is clothed with a presumption of correctness on appeal. *Wright v. Mount-Auburn Day Care*, 831 N.E.2d 158, 162 (Ind. Ct. App. 2005).

"[P]arties may obtain discovery regarding any matter relevant to the subject matter involved in the pending action, or which appears reasonably calculated to lead to the discovery of admissible evidence." *Jacob v. Chaplin*, 639 N.E.2d 1010, 1012 (Ind. 1994) (citing Ind. Tr. Rule 26(B)).  However, Trial Rule 26(B) also allows a trial court to limit the use of discovery methods if, for instance, "the discovery is unreasonably cumulative or duplicative. . . ."  The trial court may impose the limitation *sua sponte* or pursuant to a motion under Trial Rule 26(C).  After receiving the notice of deposition, Dr. Thompson filed a motion for protective order pursuant to Trial Rule 26(C).

Indiana Trial Rule 26(C) provides as follows:

**(C) Protective orders.**  Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the county where the deposition is being taken, may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

. . . .

(4) that certain matters not be inquired into, or that the scope of discovery be limited to certain matters;

. . . .

Thus, there is no question whether the trial court had the discretion to enter a protective order; the question is whether the trial court abused its discretion in limiting the second deposition in the ways that it did.

Dr. Thompson had argued that the timing of the second deposition would constitute an undue burden on her personally and professionally and that her attorneys would have to shift

6

from trial preparation to deposition preparation. To the extent that the trial court's ruling was based on Dr. Thompson's objection to the deposition because it was requested on the eve of trial, the trial court abused its discretion. The deposition request was within the agreed upon discovery period. A defendant cannot agree to a discovery time table and then object on the basis of timing when the timing is within the agreed upon parameters. *Patel v. Barker*, 742 N.E.2d 28, 33 (Ind. Ct. App. 2001) (invited error is not reversible error).

The Estate also argues that the trial court abused its discretion by limiting the topics that could be covered in Dr. Thompson's August 18, 2011 deposition, and by denying the motion to compel the answers to the deposition questions not answered by Dr. Thompson.

In support of the Estate's motion to compel Dr. Thompson's second deposition, counsel for the Estate included an email exchange between counsel for the two parties in which counsel for the Estate set forth "the primary area of focus" for the second deposition. *Appellant's App*. at 147. Counsel for the Estate prepared the list after reviewing the first deposition "to assure that [her] questions were not duplicative." *Id*. The trial court's order compelling the second deposition concluded "with the caveat that [the Estate] is limited to the area of questioning as stated in [its] pleading." *Id*. at 289-90.

During the second deposition, Dr. Thompson answered the questions posed that addressed the topics set forth in the email to counsel and presented to the trial court. When counsel for the Estate asked questions that were not related to the topics or that were derivative of the topics listed, Dr. Thompson complied with her counsel's instructions not to answer. Dr. Thompson did not answer approximately 250 questions on the basis that they were not related to the list of topics that were the primary area of focus. Nearly 248

7

questions were certified to the trial court. The trial court then reviewed the questions and concluded that most of the questions were objected to on the basis that they were beyond the scope of the list of topics. At the subsequent hearing, The Estate did not support its argument that any of the questions were secondary or related to the listed topics for deposition. Instead, counsel for the Estate argued that she was not prohibited by the court order from asking questions that went beyond the primary area topics.

In its order denying the Estate's motion to compel, the trial court explained that the limitations imposed on deposition questioning were designed to provide the Estate with the opportunity to depose Dr. Thompson beyond the questioning done in the MRP phase of the proceedings, and to afford Dr. Thompson some protection at that stage of the litigation. Counsel for the Estate was permitted to ask questions of Dr. Thompson on the topics that were requested in the email exchange between counsel for the parties. Dr. Thompson complied and answered those questions. The trial court did not abuse its discretion by limiting the deposition questioning in the ways that it did.

## II. Instruction Errors

The Estate argues that the trial court erred by refusing to give two tendered instructions. When determining whether error resulted from the giving of an instruction, we use the following three-part test: (1) whether the tendered instruction is a correct statement of the law; (2) whether there is evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions which are given. *Wade v. Terex-Telelect, Inc.*, 966 N.E.2d 186, 192 (Ind. Ct. App. 2012). The decision to give a particular instruction rests within the trial court's sound discretion. *Id.* We review this

8

decision only for an abuse of that discretion. *Id.* The giving of instructions will be reversed only if the instructions given, as a whole, failed to advise the jury of the applicable law or misled the jury. *Id.* We note that a trial court may be justified in giving an instruction if there is any evidence to support the instruction. *Id.*

### A.  Medical Record Keeping Instruction

The Estate claimed that Dr. Thompson was negligent in her care and treatment of Natasha and was negligent by failing to retain Natasha's medical records. The Estate had sought dictation and first-encounter notes from Dr. Thompson's records pertaining to Natasha's care and treatment. The Estate proposed instructing the jury on Indiana Code section 16-39-7-1. This statute states that providers, including a physician, "shall maintain the original health records or microfilms of the records for at least seven (7) years." Ind.Code § 16-39-7-1. After setting forth the statutory language, the Estate's proposed instruction provided in pertinent part as follows:

> If you decide from the greater weight of the evidence that Dr. Thompson violated the above Indiana Statute and that the violation was not excused, then you must decide that Dr. Thompson was negligent.

*Appellant's App.* at 46.

The trial court refused to give the Estate's tendered instruction and ruled as follows:

> 1. 327-Violation of Statutory Duty as Fault or Negligence. Defendant objects to this instruction as not supported by the evidence, akin to a first-party spoliation claim which Indiana does not recognize, and counter to the recent ruling of the Indiana Supreme Court in *Gordon*. Objection overruled. Given as modified: IC[ § 16]-39-7-1(d) is removed from the instruction, along with the final sentence of the instruction reading "If you decide from the greater weight of the evidence that Dr. Thompson violated the above Indiana Statute and the violation was not excused, then you must decide that Dr. Thompson was negligent." Plaintiff objects to the modification.

9

*Id.* at 298-99. The trial court read the following instructions to the jury:

> Number eleven, when the events in this case happened, I.C. sixteen thirty-nine seven one, maintenance of health care records by providers, violations, provided in part as follows, section one, as used in this section, provider means the following, one, a physician. B, a provider shall maintain the original health records or microfilms of the records for at least seven years. Number twelve, if Doctor Thompson fails to produce documents under her exclusive control, you may conclude that the documents Doctor Thompson could have produced would have been unfavorable to her case.

*Tr.* at 1590.

The Estate argues that the trial court erred by failing to include the portion of the statute that explained when civil liability attached for failing to maintain health records for at least seven years, and invited the jury to disregard the MRP's finding that Dr. Thompson had deviated from the standard of care by failing to maintain records.

In *Howard Regional Health System v. Gordon*, 952 N.E.2d 182, 188 (Ind. 2011), our Supreme Court, specifically dealing with the civil liability language from Indiana Code section 16-39-7-1(d), found that the statute did not confer a private remedy for the plaintiff. Indeed, the Supreme Court held that "the structure of Section 1(d) reads largely as a grant of immunity to hospitals that lose records due to natural disasters." *Id.* Section 1(d) does not provide a private remedy for a party to litigation. *Id.* First-party spoliation, as is claimed here, refers to spoliation of evidence by a party to the principal litigation. *Id.* "[I]ntentional first-party spoliation of evidence may be used to establish an inference that the spoliated evidence was unfavorable to the party responsible." *Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 351 (Ind. 2005). "Indiana law does not recognize a claim for 'first-party' negligent or intentional spoliation of evidence." *Id.* at 355.

10

Thus, we agree with the trial court's modification of the proposed instruction on the subject of a physician's duty to maintain medical records. Instruction 11 was a correct statement of the law and coupled with Instruction 12, covering the inference to be drawn from missing records, correctly informed the jury about how they should treat the issue of missing medical records as it pertained to the medical malpractice action against Dr. Thompson. We find no abuse of discretion here.

## B. Increased Risk of Harm Instruction

The Estate acknowledges that the trial court's instruction regarding increased risk of harm was a correct statement of the law. The Estate contends, however, that the trial court's instruction on the topic was incomplete because it did not instruct the jury how to compute damages if they found an increased risk of harm. "[U]nder the § 323 'increased risk of harm' standard of causation, 'plaintiffs with a less than fifty percent chance of recovery, who have suffered a decreased chance of recovery from illness or injury due to the negligence of a health care provider, are provided with a means of recovery." *Wolfe v. Estate of Custer ex rel. Custer*, 867 N.E.2d 589, 597 (Ind. Ct. App. 2007) (quoting *Dughaish ex rel Dughaish v. Cobb*, 729 N.E.2d 159, 166 (Ind. Ct. App. 2000)). Using the section 323 analysis, a plaintiff must show that the doctor was negligent, the negligent act increased the risk of harm to the patient, and the negligence was a substantial factor causing the plaintiff's harm. *Id.*

The trial court instructed the jury in the present case as follows:

> A health care provider is subject to liability to the patient for harm resulting from her failure to exercise reasonable care, if the failure to exercise such care increased the risk of harm to the patient.

11

*Appellant's App*. at 123. The Estate tendered an instruction, which the trial court refused to give, that would have explained to the jury how to compute damages if they found an increased risk of harm. The Estate argues that the trial court abused its discretion because the tendered instruction was a correct statement of the law, and the failure to give it left the jury with no guidance as to how to calculate the damages.

We agree with the Estate that the trial court abused its discretion by failing to give the tendered instruction. However, we agree with Dr. Thompson that the error was harmless. In this case the jury returned a verdict in favor of Dr. Thompson on the issue of liability. As such, the jury did not reach the issue of damages. Therefore, given our standard of review we conclude that the lack of an instruction on damages did not adversely affect the Estate's substantial rights such that it likely affected the result. *See Miller v. Ryan*, 706 N.E.2d 244, 248 (Ind. Ct. App. 2000) (no reversible error if failure to give instruction did not substantially and adversely affect rights of complaining party such that result was affected).

Affirmed.

BAKER, J., and BROWN, J., concur.