

FILED

Nov 01 2018, 11:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 18S-CT-548

## Campbell Hausfeld/ Scott Fetzer Company
*Appellant (Defendant below)*

—v—

## Paul Johnson
*Appellee (Plaintiff below)*

---

Argued: June 7, 2018 | Decided: November 1, 2018

Appeal from the Porter Superior Court
No. 64D05-1407-CT-5893

The Honorable Kathleen B. Lang, Senior Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 64A03-1705-CT-984

---

**Opinion by Justice David**

Chief Justice Rush, Justice Massa, Justice Slaughter, and Justice Goff concur.

**David, Justice.**

Plaintiff was seriously injured after using a tool designed by the manufacturer. He alleges the tool was defective in its design and that the manufacturer failed to provide adequate warnings. The manufacturer argues, among other things, that plaintiff misused the tool by failing to follow its directions. Today we address whether such misuse serves as a complete defense for the manufacturer. We find that it does. Under the facts and circumstances of this case, plaintiff's misuse is the cause of his injuries and could not have been reasonably expected by the manufacturer. Accordingly, we affirm the trial court.

# Facts and Procedural History

Campbell Hausfeld/Scott Fetzer Co. designs power tools that it sells to consumers through retailers in the United States. It designed a mini air die grinder, the TL1120 ("the Grinder"). The Grinder is an approximately eight-inch, hand-held, air-powered tool intended for grinding, polishing, deburring, and smoothing sharp surfaces. It comes in a box with wrenches to loosen the metal receiver at the end and to add and remove different attachments. It does not include a safety guard and such a guard would prevent use in tight areas and obscure a user's view.

The Grinder comes with various warnings and instructions. For instance, the instruction manual states "[r]ead carefully," "[p]rotect yourself . . . by observing all safety information," that "[f]ailure to comply with instructions could result in personal injury," and to "read all manuals included with this product carefully." (Appellant's App. Vol. 2 at 224.) The instructions further state that the user should retain the instructions for future reference.

The instructions contain a warning that "[s]afety glasses and ear protection must be worn during operation." (Id.) Further, the instructions tell the user to not use a cut-off disc mandrel on the Grinder unless a safety guard is in place.

On the packaging it is stated in two places that the Grinder "[p]roduces 25,000 RPM" (Appellant's App. Vol. 3 at 34.) The user is warned to use only attachments rated for a minimum of 25,000 RPM.

Plaintiff, Paul Johnson, purchased the Grinder and read its instructions. He decided to use the Grinder to help a friend do some work on that friend's truck headlights. That is, they planned to cut around the truck's headlight opening to accommodate larger headlights. Johnson took the Grinder and attached a cut-off disc to it using a mandrel. Johnson's friend expressed concern about him using the cut-off disc, which was rated lower than 25,000 RPM, but Johnson used the cut-off disc anyway.

Johnson wore his prescription glasses as he cut around the headlights with the Grinder. He believed these glasses were sufficient to serve as safety glasses. While using the Grinder, the cut-off disc came apart and a piece struck him in the left side of his face, breaking his eyeglasses and causing serious injuries to his cheek and eye. Johnson ultimately lost his left eye.

Johnson sued Campbell Hausfeld for damages asserting failure to warn and defective design claims under the Indiana Products Liability Act. Thereafter, Campbell Hausfeld filed a motion for summary judgment wherein it argued, among other things, that the designated evidence established each of the three defenses provided by the Act: misuse, alteration and incurred risk, and that further, no reasonable jury could find Johnson less than 51% at fault for his injuries.

The trial court found that Johnson misused the Grinder by failing to use safety glasses and that he was at least 51% responsible for his injuries. It granted summary judgment in favor of Campbell Hausfeld on the defective design claim but denied summary judgment with respect to the failure to warn claim. Campbell Hausfeld moved to certify the order for interlocutory appeal. The Court of Appeals affirmed in part, reversed in part and remanded finding that Campbell Hausfeld's motion for summary judgment should have been denied in its entirety.

## Standard of Review

When reviewing a summary judgment order, we stand in the shoes of the trial court. *Matter of Supervised Estate of Kent*, 99 N.E.3d 634, 637 (Ind. 2018) (citation omitted). Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

## Discussion and Decision

Under the Indiana Products Liability Act (IPLA), a plaintiff must prove that a product was placed into the stream of commerce in a defective condition unreasonably dangerous to the user and that plaintiff's injuries were caused by this dangerous product. Ind. Code § 34-20-2-1. A product can be defective within the meaning of the Act because of a manufacturing flaw, a defective design or a failure to warn of dangers while using the product. *Baker v. Heye-Am.*, 799 N.E.2d 1135, 1140 (Ind. Ct. App. 2003).

> [I]n an action based on an alleged design defect in the product or based on an alleged failure to provide adequate warnings or instructions regarding the use of the product, the party making the claim must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product or in providing the warnings or instructions.

Ind. Code § 34-20-2-2.

The IPLA provides three non-exclusive defenses to a products liability action: incurred risk (Ind. Code § 34-20-6-3); misuse of the product (Ind. Code § 34-20-6-4); and modification or alteration of the product (Ind. Code § 34-20-6-5). Additionally, comparative fault principles apply in products liability cases. (Ind. Code § 34-20-8-1). That is, the fault of the

person harmed as well as the fault of all others who caused or contributed to the harm shall be compared by the trier of fact in accord with the comparative fault statutes. Ind. Code § 34-20-8-1(a). The term "fault" means an act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others and includes the "[u]nreasonable failure to avoid an injury or to mitigate damages." Ind. Code § 34-6-2-45(a).

Johnson alleges that the Grinder's instructions failed to warn him regarding the dangers of using the Grinder with a cut-off disc but without a safety guard, and that the Grinder was defective in its design because it was sold without a safety guard and no information on how to obtain or use a safety guard. Campbell Hausfeld has alleged all three defenses: incurred risk, misuse and alteration of the Grinder.

Today we address whether the affirmative defense of misuse serves as a complete bar to recovery in a products liability action in light of inclusion of comparative fault principles in the IPLA, a question this Court left open in *Morgen v. Ford Motor Co.*, 797 N.E.2d 1146, 1148 n. 3 (Ind. 2003) ("At least two recent decisions have held that under Indiana products liability law, the defense of misuse is not a complete defense, but instead an element of comparative fault. . .The parties [ ] make no argument along these lines and we express no opinion on it.") We hold that misuse is a complete defense, but it has to be proven. In this case, Johnson misused the Grinder in multiple ways that together could not be reasonably expected by Campbell Hausfeld and that misuse was the cause of his injuries. Thus, we affirm the trial court's summary judgment order.

## I.  Indiana's Product Liability Law.

Prior to 1978, Indiana imposed strict liability on manufacturers and sellers for injuries caused by unreasonably dangerous products based on the Restatement (Second) of Torts § 402A. *See J. I. Case Co. v. Sandefur*, (1964) 245 Ind. 213, 197 N.E.2d 519; *Bemis Co., Inc. v. Rubush*, 427 N.E.2d 1058 (Ind. 1981), *reh'g denied; Reed v. Central Soya Co., Inc.*, 621 N.E.2d 1069 (Ind. 1993), *modified on reh'g*. In 1978, the Indiana legislature passed the IPLA to govern products liability claims under both strict liability and

negligence theories. *See* Ind. Code §§ 33-1-1.5-1 through 33-1-1.5-8 (1978). In 1983, the IPLA was amended to apply to only strict liability actions.

In 1995, several significant amendments were made to the IPLA. See Ind. Code §§ 33-1-1.5-1 through 33-1-1.5-10 (1995). For instance, the 1995 Amendments eliminated joint or shared liability, limited strict liability claims to manufacturing defect claims, and provided that actions against sellers based on design defects or based on failure to provide adequate warnings/instructions are to be decided using a negligence standard. Ind. Code § 33-1-1.5-1 (1995); § 33-1-1.5-3 (1995). The amendments also adopted comparative fault principles to govern product liability actions. Ind. Code § 33-1-1.5-10 (1995). In 1998, the IPLA was recodified but no substantive revisions were made. Ind. Code §§ 34-20-1-1 through 34-20-9-1.

When the IPLA was enacted in 1978, it provided four statutory defenses: 1) incurred risk; 2) product misuse; 3) product alteration; and 4) conformity with state-of-the-art. Ind. Code § 33-1-1.5-4(b) (1975). Three of these defenses—incurred risk, product misuse and product alteration— were retained with the 1995 amendments and remain in effect today. *See* Ind. Code § 33-1-1.5-4(b) (1978); Ind. Code § 33-1-1.5-4(b) (1995); Ind. Code §§ 34-20-6-3 through 34-20-6-5 (2018).

## II. Like the other statutory defenses, misuse is a complete defense—but it has be proven.

The misuse defense under the IPLA provides:

> It is a defense to an action under this article (or IC 33-1-1.5 before its repeal) that a cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party.

Ind. Code § 34-20-6-4.

Johnson argues and the Court of Appeals found that this defense is not a complete one, but rather it is considered with all other fault in the case under the comparative fault scheme. It is true that since the 1995 Amendment of the IPLA, all fault in products liability cases must be comparatively assessed. Also, since the Amendment, both our Court of Appeals and the Seventh Circuit have held that the misuse does not operate as a complete defense to bar recovery. *See Chapman v. Maytag Corp.,* 297 F.3d 682, 689 (7th Cir. 2002) (determining that "misuse" falls within the definition of "fault"); *Barnard v. Saturn Corp., a Div. of Gen. Motors Corp.,* 790 N.E.2d 1023 (Ind. Ct. App. 2003); *Wiegle v. SPX Corp.,* 729 F.3d 724 (7th Cir. 2013). However, in at least one case, *Indianapolis Athletic Club, Inc. v. Alco Standard Corp.,* 709 N.E.2d 1070, 1072 (Ind. Ct. App. 1999), our Court of Appeals came to the opposite conclusion: that misuse of a product is a complete defense. *This* Court has not yet addressed how the 1995 Amendments to the IPLA, which include the addition of comparative fault principles, impact the statutory defense of misuse.

Prior to the 1995 Amendments, this Court held that misuse would bar recovery. *Hubbard Mfg. Co., Inc. v. Greeson,* 515 N.E.2d 1071, 1073 (Ind. 1987). The reasoning for that defense is because misuse "is considered an intervening cause that relieves the manufacturer of liability where the intervening act could not have been reasonably foreseen by the manufacturer." *Indianapolis Athletic Club,* 709 N.E.2d at 1072. This logic is no less true today, even after the amendments that adopted comparative fault. Additionally, this Court must presume that the General Assembly was aware of the common law prior to the 1995 Amendments and did not intend to change it beyond the express terms of its enactments and the implications that follow. *Johnson v. Wysocki,* 990 N.E.2d 456, 466 (Ind. 2013).

Prior to and since the 1995 Amendments, the other two statutory defenses that remain—incurred risk and alteration—have been treated as complete ones. *See Vaughn v. Daniels Co. (West Virginia), Inc.,* 841 N.E.2d 1133, 1146 (Ind. 2006) ("Incurred risk acts as a complete bar to liability with respect to negligence claims brought under the [IPLA]."); *Koske v. Townsend Eng'g Co.,* 551 N.E.2d 437, 441

(Ind. 1990) ("recovery will be denied an injured plaintiff who had actual knowledge and appreciation of the specific danger and voluntarily accepted [incurred] the risk"); *Hall v. Graco Inc.*, 2004 WL 2137655 at *5 (S.D. Ind. 2004 ) ("product alteration is a complete defense" to a products liability claim); *Foley v. Case Corp.*, 884 F.Supp. 313, 315 (S.D. Ind. 1994) ("Modification or alteration of a product is a complete defense to certain product liability actions.") It does not make sense that these two defenses are complete bars, even after the amendments, but that misuse is only a consideration after the amendments. This would violate the doctrine of *in pari materia*—that statutes relating to the same subject matter should be construed together to produce a "harmonious statutory scheme." *Bonnell v. Cotner*, 50 N.E.3d 361, 367 n. 5 (Ind. 2016).

Further, it would not make sense to retain the statutory defenses at all if they were only considerations. Statutes are not to be construed in a way that renders them meaningless. *City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007). The legislature could have either eliminated the statutory defenses (it eliminated one of them in 1995: compliance with state-of-the-art), modified the language of the defenses or explicitly included misuse in the definition of fault or as part of the comparative fault provision. It did not. When we interpret statutes, we are mindful of both what they do say and what they do not say. *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016) (internal citations omitted).

Other states have expressly incorporated misuse as part of the definition of fault under their comparative fault schemes. For example, Arizona's statutory definition of fault includes "products liability and misuse, modification or abuse of a product." Ariz. Rev. Stat. § 12-2506(F). Similarly, Iowa defines fault to include "misuse of a product for which the defendant would otherwise be liable" Iowa Code § 668.1(1) and Washington includes "misuse of a product" in its definition of fault. Wash. Rev. Code § 4.22.015. However, Indiana has not explicitly included misuse in its definition of fault. The IPLA also omits Model Uniform Product Liability Act language that makes the misuse defense "subject to

reduction or apportionment to the extent that the misuse was a cause of the harm." MODEL UNIF. PROD. LIAB. ACT. § 112(C).

The majority view among jurisdictions is that "misuse operates as a complete bar to recovery, and that misuse of a product, irrespective of the existence of a product defect, will preclude the manufacturer's or seller's liability for injury or death resulting from use of the product. " Randy R. Koenders, *Products Liability: Product Misuse Defense*, 65 A.L.R. 4th 263 (1988). We see no clear indication in the IPLA that the legislature intended to adopt the minority approach for Indiana.

While we acknowledge that the IPLA definition is broad and seems like it could encompass the definition of misuse, it falls short of actually doing so. To engraft misuse into the comparative fault section of the statute would violate the doctrine of *in pari materia* and render the misuse defense meaningless. Accordingly, we hold that the misuse defense, like the alteration and incurred risk defenses, is a complete one.

This is not to say that any allegation on the part of a seller that a plaintiff misused the product will suffice. The misuse defense is qualified by the plain language in the statute. That is, in order to successfully employ misuse as a defense, the seller must show both that the misuse of the product is: 1) the cause of the harm; and 2) not reasonably expected by the seller. If a plaintiff misuses a product but it is not the cause of the harm and/or the misuse can reasonably be expected by the seller, then the misuse would not serve as a complete defense and comparative fault principles would apply.

## III.   Johnson's injuries could have been avoided had he followed the instructions, and Campbell Hausfeld could not reasonably expect that a consumer would misuse the Grinder in three distinct ways.

Misuse is typically a question of fact for a jury to decide. *Morgen*, 797 N.E.2d at 1149. However, summary judgment based on misuse is

appropriate when the undisputed evidence proves that the plaintiff misused the product in an unforeseeable manner. *Barnard*, 790 N.E.2d at 1029. Misuse is established as a matter of law when the undisputed evidence proves that plaintiff used the product in direct contravention of the product's warnings and instructions. *Id.* at 1030-31.

Campbell Hausfeld alleges that Johnson misused the Grinder in three ways: he did not wear proper safety glasses; he attached and used a cut-off disc without a safety guard in place; and the cut-off disc had an inadequate RPM rating. As for not wearing safety glasses, Johnson claims he believed his prescription eyeglasses were sufficient. As for using the cut-off disc without a guard, the instructions provide: "Do not use a cut-off disc mandrel on this tool unless a safety guard is in place." (Appellant's App. Vol. III at 201.) Johnson attached a cut-off disc but did not use a guard. Finally, the instructions on the grinder warn users to use attachments rated for a minimum of 25,000 RPM and Johnson disregarded this warning as the cut-off disc he used was rated for 19,000 RPM.

Johnson admitted he would not have been injured had he followed the Grinder's instructions about not using a guard. Safety eyeglasses may not have prevented all injury caused when the disc broke loose and struck Johnson in the face, but they would have more adequately protected Johnson's eye. With regard to the RPM rating, it is not clear that this factored into Johnson's injuries in light of testimony by experts on both sides acknowledging that under the particular circumstances of the case, it may not have mattered that the cut-off disc was not the rating called for in the Grinder's instructions. In any case, had Johnson used a guard and safety glasses, his injuries would have been avoided. Thus, his failure to follow the instructions is the cause of his injuries.

At issue then is whether Johnson's failure to follow the instructions was reasonably expected by Campbell Hausfeld. The trial court concluded that the safety glasses instruction was a "clear warning and visual definition of safety glasses that can be understood by a user in any country, speaking any language." (Appellant's App. Vol II. at 21-22.) However, Johnson argues, and the Court of Appeals found that there was an issue of material fact regarding whether Campbell Hausfeld could

foresee a user not using safety glasses. The parties also disagree about whether the instruction about not using a cut-off disc without a guard indicates that Campbell Hausfeld could foresee a user not using a guard.

We find that while Campbell Hausfeld could have perhaps reasonably expected a user to not use proper eyewear or for a user to attach a cut-off disc without a guard, or for a user to attach something with an improper RPM rating, it was not reasonably expected for a user to disregard the safety instructions in all three of these ways.

*Leon v. Caterpillar Indus., Inc.,* 69 F.3d 1326, 1344 (7th Cir. 1995), *amended* Nov. 13, 1995, *amended* Nov. 22, 1995 is instructive. There, plaintiff admittedly ignored safety warnings and instructions; however, he argued that the manufacturers of the forklift should have foreseen the misuse. The Seventh Circuit held that the forklift manufacturer could not reasonably expect that plaintiff would fail to comply with four independent safety regulations where compliance with one of the instructions would have prevented the injury. *Id* at 1343-44. Similarly, in *Barnard*, 790 N.E.2d at 1031, our Court of Appeals applied this reasoning to find a plaintiff who failed to heed multiple warnings misused the product and that under the circumstances no reasonable trier of fact could find he was less than fifty percent at fault for his injuries.

Here, Johnson could have avoided injury had he not used the cut-off disc or worn safety glasses. He did not do so. His multiple failures to follow the Grinder's instructions were the cause of his injuries and taken together, could not be reasonably expected by a seller.

## Conclusion

We affirm the trial court's grant of summary judgment for Campbell Hausfeld and we remand for proceedings consistent with this opinion.

Rush, C.J., and Massa, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT

Peter J. Rusthoven
J. Curtis Greene
Mark J. Crandley
Meredith Thornburgh White
J.T. Larson
BARNES & THORNBURG LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE,
DEFENSE TRIAL COUNSEL OF INDIANA

Julia Blackwell Gelinas
Robert B. Thornburg
Maggie L. Smith
FROST BROWN TODD LLC
Indianapolis, Indiana

Lucy R. Dollens
QUARLES & BRADY, LLP
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE,
THE INDIANA LEGAL FOUNDATION

Anne Cowgur
TAFT STETTINIUS & HOLLISTER LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Theodore L. Stacy
Valparaiso, Indiana

ATTORNEYS FOR AMICUS CURIAE,
INDIANA TRIAL LAWYERS ASSOCIATION
Nicholas C. Deets
Frederick R. Hovde
HOVDE DASSOW & DEETS LLC
Indianapolis, Indiana