**FILED**
Apr 12 2023, 9:04 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Edward F. Harney, Jr.
Nicholas C. Naum
HUME SMITH GEDDES GREEN &
SIMMONS, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Terry Noffsinger
Kyle Noffsinger
KOOI Law Firm, LLC
Noblesville, Indiana

S. Anthony Long
Long Law Office, PC
Boonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Superior Oil Company, Inc.,
d/b/a Superior Solvents and
Chemicals, Inc.,

*Appellant-Defendant,*

v.

Samantha M. Labno-Fritchley,
individually; as next friend of
Penelope Rose Fritchley, a
minor; and as personal
representative of the estate of
John Henry Fritchley II,
deceased,

*Appellees-Plaintiffs.*

April 12, 2023

Court of Appeals Case No.
22A-CT-1595

Interlocutory Appeal from the
Vanderburgh Circuit Court

The Hon. David D. Kiely, Judge

Trial Court Cause No.
82C01-1901-CT-338

**Bradford, Judge.**

# Case Summary

[1] In February of 2018, Boonville resident John Fritchley II attempted to remove the top of an empty fifty-five-gallon, metal drum (in particular, "the Drum," generally, "drums") with a cutting torch when it exploded, blowing the top off of the Drum and killing him instantly. The top of the Drum—down at which John had to have been looking as he cut—bore a warning label, which included a red pictogram of a flame with the words "FLAMMABLE LIQUID" and also provided, *inter alia*, "Do not flame cut, braze or weld empty container." Investigation of the incident revealed that the Drum had previously been in the possession of Superior Oil Company, Inc., d/b/a Superior Solvents and Chemicals, Inc. ("Superior"), who had filled it with a flammable brake-cleaning solution called S-1693.

[2] In December of 2018, Samantha M. Labno-Fritchley, John's widow, filed suit against Superior (and two other parties) on her behalf, as next friend of her and John's daughter, and as personal representative of John's estate (collectively, "Samantha"). Samantha's suit included allegations of negligence, violations of the Indiana Products Liability Act ("the Act"), negligent infliction of emotional distress, and wrongful death. Superior moved for summary judgment, which motion the trial court denied. Superior contends that the trial court erred in

denying its motion for summary judgment, arguing that the designated evidence establishes three statutory affirmative defenses to a claim made pursuant to the Act. Because we agree with Superior that the designated evidence establishes two of the affirmative defenses, we reverse and remand with instructions.

## Facts and Procedural History

Superior manufactures a product called S-1693, which is a mixture of eight percent isopropanol and ninety-two percent heptane. S-1693 is used as an automotive brake cleaner. S-1693 is flammable and will easily burn if exposed to flame. After producing S-1693, Superior packages it into drums, which are specifically designed to handle flammable liquid. Pursuant to federal regulations, Superior affixes a warning label on the top of each drum of S-1693 that it sells. The label is affixed to the top of each drum, measures approximately eight by twelve inches, and is reproduced below.



Appellant's App. Vol. III p. 36.

[4] The warning label, *inter alia*, warns of the dangers of an empty metal drum and provides certain specific instructions, including "[d]o not flame cut, braze, or weld empty container." Appellant's App. Vol. III p. 36. The warning label also includes a red pictogram of a flame over the words "FLAMMABLE LIQUID[;]" two orange-bordered diamonds, one containing a flame and the other an exclamation point; a list entitled "DANGER" that includes "[h]ighly flammable liquid and vapor[;]" and an instruction to "[k]eep away from heat/sparks/open flames/hot surfaces." Appellant's App. Vol. III p. 36.

[5] After manufacturing the S-1693, Superior typically sells the product in drums to distributors. Superior ships a material safety data sheet for the S-1693 to every

new customer to further warn customers of the hazards associated with it. Distributors are required to forward the safety data sheet to their customers.

[6] We will assume, without deciding, that Fritchley had obtained the Drum from non-party Paul Rhoades, who had obtained it from an automobile dealership, who had purchased it from one of Superior's distributors. After obtaining the Drum from Rhoades, Fritchley took it home, where he attempted to remove the top of the Drum with a gas cutting torch. At the time Fritchley purchased the Drum from Rhoads, Superior's warning label was still affixed to its top.

[7] Prior to the incident, Fritchley had worked at ALCOA Warrick Operations ("ALCOA") in Newburgh, Indiana, for seventeen years. Fritchley started working at ALCOA in 2001, and held numerous positions throughout his ALCOA employment, including Potroom Crew Leader, Facilities Maintenance Crew Leader, Maintenance Technical Assistant, Maintenance Supervisor, and Mechanical Maintenance Supervisor. Fritchley also participated in numerous training presentations, many of which he repeated during the course of his employment. ALCOA training records show that Fritchley attended training presentations including "Critical Risk Management[,]" "Fire Prevention, Protection & Extinguishers[,]" "Workplace Critical Hazard Refresher Training[,]" "Hazard Communication[,]" and "Performing Hot Works and Hot Work Permit Refresher Module[.]" Appellant's App. Vol. III p. 180.

[8] The ALCOA Fire Prevention, Protection, and Extinguishers Training presentation contained information on fire safety, how fires start, and ignition sources of the fires. Fritchley attended this particular training presentation on

twenty-two separate occasions. Of particular note, a slide entitled "Class B Fires" contains specific examples of liquids that can be flammable, including gasoline, coatings/solvents, mill sludge, hydraulic oils, and lubricating oils. Appellant's App. Vol. III p. 169. The training presentation includes examples of ignition sources, such as smoking, combining spontaneously combustible materials together, welding, and cutting. Underscoring the hazards with spark or flame producing operations, the training presentation also advised employees of the requirement to obtain a hot-work permit before performing spark or flame producing operations, such as welding, cutting with a torch, and soldering.

[9] The ALCOA Hazard Communication presentation examined container labels such as the label on the empty S-1693 barrel. One of the training objectives of this presentation was for individuals to "[u]nderstand the information provided on hazardous material labels and the Warrick labeling requirements[.]" Appellant's App. Vol. III p. 207. This presentation discussed the difference between a product identifier, which identifies the hazardous material inside a container; a hazard statement, which describes the "nature and degree of hazard[;]" pictograms describing different hazards, such as flammable materials; and precautionary statements, such as "keep away from heat/sparks/open flame[.]" Appellant's App. Vol. III pp. 213, 214. Fritchley participated in this hazard-communication presentation on five separate occasions.

[10] Fritchley attended the "Hot Works Awareness and Permit Refresher" on five occasions, as well as attending the initial "Hot Work Permit Training Initial[.]" Appellant's App. Vol. III p. 140. These training modules contained educational materials regarding use and operation of welding, torch cutting, and soldering. The training module also apprised the participant as to proper uses of hot work, including keeping combustible material away from using flame or spark producing tools and the recommendation to find alternative methods such as cold cutting which cut materials without creating flame or sparks.

[11] The Hot Works training module also had a specific slide dedicated to working with piping and tanks, stating "[h]ot work performed on piping, tanks, vessels, containers, and confined spaces that contain *or have previously contained* a hazardous, flammable, or combustible liquids can explode. *Piping, tanks and vessels can explode!!!!!!*" Appellant's App. Vol. III p. 229 (first emphasis added, second emphasis in original). The slide also stated: "Never cut or weld on a drum[.]" Appellant's App. Vol. III p. 229.

[12] On December 16, 2018, Samantha filed suit against Superior and two other parties, making claims of negligence, violations of the Act, negligent infliction of emotional distress, and wrongful death. Superior asserted numerous affirmative defenses in response to the complaint, including three affirmative defenses authorized by the Act. Specifically, Superior alleged

> [a] cause of the physical harm was a misuse of the product by the Decedent not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party[,] [a] cause of the physical harm was a modification or alteration of

the product made by any person after the product's delivery to the initial user or consumer and the modification or alteration was the proximate cause of physical harm[, and] Decedent incurred the risk of harm by his actions."

Appellant's App. Vol. III pp. 20–21.

[13]     On November 8, 2021, Superior moved for summary judgment, arguing that all of the Estate's claims arising from the metal drum explosion are governed by the Act and subject to all three affirmative defenses provided therein. On April 6, 2022, the trial court denied Superior's motion for summary judgment. The trial court certified the matter for interlocutory appeal, and we accepted jurisdiction.

## Discussion and Decision

[14]     When reviewing the grant or denial of a summary-judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). To prevail on a summary-judgment motion, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Merchs. Nat'l Bank*, 741 N.E.2d at 386. Once the moving party has met this burden with a *prima facie* showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.* "In determining whether there is a genuine issue

of material fact precluding summary judgment, all doubts must be resolved against the moving party and the facts set forth by the party opposing the motion must be accepted as true." *Lawlis v. Kightlinger & Gray*, 562 N.E.2d 435, 438–39 (Ind. Ct. App. 1990), *trans. denied*.

[15] Pursuant to the Act,

> a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if:
>
> (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;
>
> (2) the seller is engaged in the business of selling the product; and
>
> (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

Ind. Code § 34-20-2-1. The Act imposes liability upon sellers and manufacturers of defective products. *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 809 (Ind. 2007) (citing *Morgen v. Ford Motor Co.*, 797 N.E.2d 1146, 1148 (Ind. 2003)). The Act "governs all actions that are: (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product … regardless of the substantive legal theory or theories upon which the action is brought." *Id*. at 810 (citing Ind. Code § 34-20-1-1) (ellipsis in *Rushford*).

[16] A product can be defective within the meaning of the Act because of a manufacturing flaw, a defective design, or a failure to warn of dangers while using the product. *Baker v. Heye-Am.*, 799 N.E.2d 1135, 1140 (Ind. Ct. App. 2003), *trans denied*. Indiana Code section 34-20-4-2 provides as follows:

> A product is defective under this article if the seller fails to:
>
>> (1) properly package or label the product to give reasonable warnings of danger about the product; or
>>
>> (2) give reasonably complete instructions on proper use of the product;
>
> when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer.

[17] Moreover,

> [I]n an action based on an alleged design defect in the product or based on an alleged failure to provide adequate warnings or instructions regarding the use of the product, the party making the claim must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product or in providing the warnings or instructions.

Ind. Code § 34-20-2-2.

[18] The Act provides three non-exclusive defenses to a products liability action: misuse of the product, modification or alteration of the product, and use of the product with knowledge of the defect and danger. Ind. Code §§ 34-20-6-3, -4, -5; *see also Campbell Hausfeld/Scott Fetzer Co. v. Johnson*, 109 N.E.3d 953, 956 (Ind. 2018). Superior correctly points out that all three defenses are complete affirmative defenses to a claim pursuant to the Act; if any one of them is

established by the designated evidence as matter of law, Superior would be entitled to summary judgment on Samantha's claims.

## I.     Misuse

[19]    Indiana Code section 34-20-6-4 provides as follows:

> It is a defense to an action under this article […] that a cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party.

Misuse "is established as a matter of law when the undisputed evidence proves that plaintiff used the product in direct contravention of the product's warnings and instructions." *Campbell*, 109 N.E.3d at 955. Moreover, as mentioned, misuse is a complete defense under the Act. *Id*. ("Accordingly, we hold that the misuse defense, like the alteration and incurred risk defenses, is a complete one.").

[20]    The Drum's warning label, which would have been clearly visible to John as he prepared to cut, warns generally of the dangers of an empty metal drum that contains or has contained S-1693 and specifically instructs not to cut an empty drum with a flame:

> ATTENTION! This container
> hazardous when empty.
>
> Since empty container retains product residues, vapor or liquid, all labeled hazardous precaution must be observed. *Do not flame cut, braze, or weld empty container.* Do not reuse empty package without commercial cleaning or reconditioning. Store empty container away from heat and flame.

Appellant's App. Vol. III p. 36 (emphasis added). In addition to the empty container warnings and instructions in the paragraph above, the warning label includes a red pictogram of a flame over the words "FLAMMABLE LIQUID[;]" two orange-bordered diamonds, one containing a flame and the other an exclamation point; a list entitled "DANGER" that includes "[h]ighly flammable liquid and vapor[;]" and a warning to "[k]eep away from heat/sparks/open flames/hot surfaces." Appellant's App. Vol. III p. 36.

[21] Because the undisputed designated evidence establishes that the Drum was used in direct contravention of its label's prominent and explicit warnings regarding flammability and instructions regarding flame cutting an empty drum and/or exposing it to heat, we conclude that the defense of misuse has been established as a matter of law. In light of the prominent and emphatic nature of the warning label on the Drum, Superior could not have reasonably expected that it would be misused in the way that it was.[1]

[22] While the facts of this case are not on all fours with those in *Campbell*, the general question is the same: whether the particular misuse could have been reasonably expected. In that case, the Indiana Supreme Court concluded that it was the *number* of warnings that were ignored (failure to use a safety guard, wear safety glasses, and use a cut-disc rated to 25,000 RPM) that could not have been reasonably expected, 109 N.E.3d at 960, while here, it was the *nature* of

---

[1] While we conclude that the label was emphatic and prominent enough to convey the risk posed by the Drum to a person without special training, the misuse that occurred in this case—committed, as it was, by a person with John's training and background—would have been particularly unforeseeable.

the warning. Even though John ignored essentially only one warning, we have little trouble concluding that the nature of that warning was prominent and emphatic enough that Superior could not reasonably have expected any person to ignore it.[2]

## II.   Incurred Risk

[23]   Indiana Code section 34-20-6-3 provides that

> It is a defense to an action under this article (or IC 33-1-1.5 before its repeal) that the user or consumer bringing the action:
>
> > (1) knew of the defect;
> >
> > (2) was aware of the danger in the product; and
> >
> > (3) nevertheless proceeded to make use of the product and was injured.

Samantha seems to argue that the Drum was a defective product both for posing an explosion risk and for failing to bear adequate warnings. Either way, the analysis, in large part, boils down to whether the warning label on the Drum was adequate, because, even if we assume that the Drum was inherently defective for being explosive, the question left would still be whether the warning label was adequate to trigger the incurred-risk defense.

[24]   For reasons similar to those that informed our conclusion that John misused the Drum as a matter of law, we conclude that the warning label was adequate to

---

[2] Samantha focuses on her contention that the use of old drums as burn barrels is common enough that Superior could reasonably have expected the Drum to be made into one at some point, perhaps with the use a cutting torch. Samantha's argument somewhat misses the point, however, as it not the foreseeability of the use that is the question, it is the foreseeability of the *misuse*.

warn a person of the risks posed by the Drum. In summary, the large, prominent warning label on the top of Drum informed readers that the contents of the Drum were flammable and explosive and would remain so even when Drum was empty unless it had been reconditioned. The label also specifically informed readers in no uncertain terms not to cut the Drum with a flame even if empty, instructions which, if followed, would have avoided the danger posed by the Drum altogether. Put another way, the designated evidence establishes that the warning label gave reasonable warnings about the dangers posed by the Drum and reasonably complete instructions on how to avoid that danger, warnings and instructions that would almost certainly have meant more to a person like John in light of his extensive training and background with hot works, hazardous materials, fire prevention, and the interpretation of such labels. *See* Ind. Code § 34-20-4-2. Either way, if the question is whether the warnings were adequate to render the Drum non-defective as a matter of law or whether the warnings were adequate to trigger the incurred-risk defense, the result is the same: Superior is entitled to summary judgment on all of Samantha's claims.[3]

[25] We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

---

[3] Because we conclude that the designated evidence establishes the defenses of misuse and incurred risk, we need not address Superior's contention that the designated evidence also establishes the defense of alteration as a matter of law.

May, J., and Mathias, J., concur.